## CENTRAL FINANCE CORPORATION v. BROWN et al.

No. 24489.    Jan. 21, 1936.

Moss. Breckinridge & Young and S. F. Goldwin, for plaintiff in error.

Mauzy & Coppedge, Lashley & Rambo, S. C. Edmister, Massingale, Duff & Manatt, Chas. R. Nesbitt, E. M. Connor, Steele & Daugherty, R. E. Gish, H. A. Tallman, Hunter L Johnson, Floyd E. Staley, Searcy & Underwood, Yancey, Spillers & Fist, Neal E. McNeill, John W. McCuen, and Bailey E. Bell, for defendants in error.

OSBORN, V. C. J. This action was instituted in the district court of Tulsa county by the Central Finance Corporation

against E. M. Brown and a number of other defendants wherein it was sought to establish and foreclose 109 laborers' lien claims held by plaintiff by purchase and assignment. A number of the defendants by answer and cross-petition set up materialmen's liens against the property of the defendant Brown. After hearing, the trial court fixed the amount of the various lien claims by plaintiff and defendants and ordered the same foreclosed. The court refused to hold, however. that plaintiff's liens were prior to those of defendants, but held that all of said liens were equal. From said judgment plaintiff has appealed. The parties will be referred to as they appeared in the trial court.

In November, 1930, defendant E. M. Brown, who was the owner of certain lots in the city of Tulsa, entered into a contract with one O. H. Rundquist, doing business as the Rundquist Construction Company, for the construction of an apartment building on said lots, said contractor to furnish all labor and material and construct said building for an agreed sum of $30,789.50. A portion of the work was subcontracted by Rundquist to other parties. The principal contractor and the subcontractors employed mechanics and laborers who performed work and labor in the construction of said building.

The contractor purchased a large amount of material from various dealers which went into the construction of the building. Much of the material was not paid for by the contractor or the owner, and timely materialmen's liens were filed.

After the work had started and had progressed for two or three weeks, the principal contractor was unable to meet his pay roll. He went to Mr. W. A. Delaney, president of the plaintiff company, and sought a loan of money for the purpose of paying wages to the laborers as the same became due. He offered to give the company a lien on the building for the money. Delaney consulted an attorney and was advised against entering into such an arrangement. Thereafter an arrangement was made whereby the plaintiff company was to buy claims of the laborers from time to time as their wages became due. Rundquist, the contractor, by agreement, paid plaintiff 10 per cent. of each laborer's claim paid by plaintiff. It is shown that on the day prior to each pay day, Rundquist would make out a list of all the laborers showing the name of each, the number of hours worked by each laborer, and the rate of wage per hour and the amount due. and deliver it to plaintiff at its office. On the following day the plaintiff company would make up a laborer's lien claim for each laborer for the amount due as shown on the list furnished by Rundquist and would send an employee of the office. who was a notary public, with the lien claim statement so prepared, together with checks for the amount due the several mechanics and laborers, to the office of the contractor and there each mechanic and laborer would sign and verify a lien claim statement, receive his check, and execute an assignment of the lien claim to plaintiff. Then Rundquist would give plaintiff a check for 10 per cent. of the whole amount paid out by plaintiff on the pay roll for that week. This arrangement was carried on until the work was practically completed. Plaintiff had never agreed to take care of the entire pay roll until the work was completed. He could have declined to do so at any time, but the arrangement was carried out until the work was practically completed. Not only the laborers employed by the principal contractor. but those employed by the subcontractors, were included in the general method pursuant to the agreement between plaintiff and the principal contractor.

No cross-appeal was filed by defendants: therefore, the scope of our inquiry is confined solely to the issue of priority.

In order to sustain the finding of the trial court it is urged by defendants that the lien claims accruing to the laborers are personal to the laborers and are not assignable. Section 11016, O. S. 1931, provides:

"All claims for liens and rights of action to recover therefor hereunder shall be assignable so as to vest in the assignee all rights and remedies herein given, subject to all defenses thereto that might be made if such assignment had not been made. Where a statement has been filed and recorded as herein provided, such assignment may be made by an entry, on the same page of the mechanics' lien docket containing the record of the lien, signed by the claimant or his lawful representatives. and attested by the clerk; or such assignment may be made by a separate instrument in writing."

It is argued that the above section is not applicable in this case for the reason that the labor claims involved herein arise by virtue of sections 11007 to 11011, O. S. 1931, which were enacted as chapter 114, Session Laws 1910-11, which is not a portion of the general lien law, but constitutes a separate,

independent enactment and must be construed as such; that since liens of materialmen and mechanics were expressly created by statute, they are not assignable unless expressly made so by statute. This identical contention was made in the recent case of Braden Co. v. Lancaster Lumber Co., 170 Okla. 30, 38 P. (2d) 575. The argument was answered in the opinion in that case as follows:

"The Lancaster Lumber Company contends that laborers' liens are not assignable. We do not agree with that contention and we hold to the contrary. See Newman et al. v. Kirk et al., 164 Okla. 147, 23 P. (2d) 163; Mapel et al. v. Long-Bell Lumber Co. et al., 103 Okla. 249, 229 P. 793; Midland Valley R. Co. v. McLemore et al., 73 Okla. 102, 174 P. 1079; section 11007, O. S. 1931, and section 10116, O. S. 1931."

It has been the uniform holding of this court that by virtue of section 11011, O. S. 1931, a laborer's lien takes precedence over all other liens, whether created prior or subsequent to the laborer's lien. T. J. Stewart Lumber Co. v. Derry, 122 Okla. 208, 253 P. 485; McGuyre v. Duncan, 100 Okla. 217, 229 P. 199; Morley v. McCaskey, 134 Okla. 50, 270 P. 1107. By the express provisions of section 11016, supra, the assignee of a laborer's lien claim acquires all the rights of the person who performed the labor.

At the request of the parties the trial court made specific findings of fact on certain issues. We have examined such findings of fact in order to determine if possible the theory upon which the trial court denied to plaintiff the right to priority of its lien claims. The court found that certain materialmen were informed by Rundquist that the labor bills would be taken care of and that these materialmen furnished the material relying upon the fact that the labor was being paid every pay day. It was also found that the plaintiff knew that materialmen were furnishing material and did not advise the materialmen that it was purchasing these labor claims and was going to assert priority as labor liens. We therefore assume that the trial court intended to hold that plaintiff was enjoined with the duty of ascertaining who the materialmen were and of notifying them prior to the time they furnished the materials that plaintiff was the assignee of all labor liens and would at the proper time assert its right to priority, and having failed to do so, plaintiff would be estopped by silence. We are cited to no statute and no authority which either directly or by inference attempts to fix such a duty or responsibility upon one who seeks to take advantage of statutory provisions relating to labor liens. In the absence of a positive duty to speak, there could be no estoppel by silence. Heckman v. Davis, 56 Okla. 483, 155 P. 1170; Ash v. Mickleson, 118 Okla. 163, 247 P. 680.

Without weighing the evidence to ascertain the clear weight thereof with reference to the findings of the court regarding the statements made by Rundquist to the effect that the pay roll would be taken care of, it is sufficient to say that the statutory rights of plaintiff may not be defeated by proof of a mere statement of this nature made by the contractor. There is no proof or contention that the arrangement was secretive or designed for the purpose of defeating the rights of defendants, and no fraud or improper motive is established by the evidence.

It is manifest that the trial court erred in denying priority as to plaintiff's lien claims.

Accordingly, the judgment of the trial court is reversed, and the cause remanded, with directions to enter judgment in conformity with the views herein expressed.

McNEILL, C. J., and BAYLESS, BUSBY, and WELCH, JJ., concur. RILEY, CORN, and GIBSON, JJ., dissent. PHELPS, J., absent.