SMITH, Respondent, *v.* GUNNISS et ux., Appellants; PINSKI BROS., INC., Intervener and Respondent.

(No. 8426.)

(Submitted October 14, 1943. Decided November 18, 1943.)

[144 Pac. (2d) 186.]

*Messrs. Hall & Alexander,* for Appellant, submitted a brief; *Mr. H. B. Hall* argued the cause orally.

366

*Messrs. Swanberg & Swanberg,* for Respondent, submitted a brief; *Mr. Randall Swanberg* argued the cause orally.

MR. JUSTICE ADAIR delivered the opinion of the court.

Defendants W. H. Gunniss and Ethel R. Gunniss, his wife, appeal from a judgment decreeing foreclosure of mechanics' and materialmen's lien on residence property owned by them, and situate at No. 3313 Fifth Avenue, North, in the city of Great Falls, Montana.

By said judgment the court decreed that defendants were indebted to the plaintiff Lester H. Smith, a building contractor, in the amount of $3,632.17, with interest, for the construction of improvements and additions to defendants' residence.

The residence occupied by Mr. and Mrs. Gunniss consisted of a two-room brick house with a small wooden lean-to addition. This lean-to was used as a kitchen and bath. With the view of enlarging their dwelling the Gunnisses commenced certain new construction around and adjacent to the two-room brick house, the latter remaining intact. Upon building the walls, laying a concrete floor and placing a roof on the new structure, work ceased. Shortly before November 2, 1940, Mr. and Mrs. Gunniss talked with the plaintiff Lester H. Smith, a building contractor, with reference to completing the construction theretofore begun. The plaintiff Smith and his foreman inspected the premises and talked further with Mr. and Mrs. Gunniss "as to their ideas on what they wanted done." The latter were quite indefinite as to just what was to be done and as to how they desired their house completed and the plaintiff Smith testified that he declined to set any definite amount or to enter into any fixed price contract for the job. Instead, the plaintiff Smith prepared and the defendants Gunniss, on November 2, 1940, executed a written agreement whereby the construction work was to be begun and the labor and materials therefor supplied by the contractor, at cost plus taxes and ten per cent.

Five days after the above agreement was executed, the construction work commenced and continued until January 24, 1941. Mr. and Mrs. Gunniss observed the work as it progressed. A statement of the approximate amount owing the contractor Smith for labor, materials and supplies, which had been furnished for the home to January 22, 1941, was on that date furnished Mr. and Mrs. Gunniss at their request. Two days later the Gunnisses ordered Smith to cease all work on the dwelling, giving as their reason that they considered the cost was getting too high. Smith, as directed, stopped work and moved off the job on January 24, 1941. When the Gunnisses thus stopped the work, they had paid absolutely nothing for the labor, materials and supplies that had been furnished by Smith in remodeling their house. The contractor, Smith, asked Mr. Gunniss what he was going to do about compensating him and Mr. Gunniss replied that he was not going to pay Smith. A month passed, and having received no money from the Gunnisses, the contractor Smith on February 24, 1941, filed with the county clerk and recorder a duly verified notice and claim of lien against the Gunniss property in the amount of $3,753.91. Thereafter on March 17, 1941, the intervener Pinski Brothers, Inc., who had installed the plumbing and heating in the house, at the instance and request of the defendants, filed notice and claim of lien in the amount of $1,138.80 against the same property. The case was tried to the court without a jury and judgments were entered in favor of the plaintiff Smith and the intervener Pinski Brothers, Inc. No appeal has been taken from the judgment for the intervener and this appeal is only from the judgment rendered in favor of the plaintiff, Lester H. Smith.

Defendants assert that the complaint fails to state a cause of action in: (1) That this action is based upon a written contract upon which plaintiff seeks to recover for moneys due under its terms and that the complaint fails to allege performance of the contract on the part of plaintiff; (2) that the allegation that "plaintiff herein, under the direction of defendants, has

carried on the work and furnished the materials for said remodeling, repairing and construction in accordance with the directions of the defendants'' is a mere conclusion of law as are the allegations of paragraph V of the complaint which reads: ''That subsequent to the 2nd day of November, 1940, and up to and including January 24, 1941, upon which date the same remodeling, repairing, and construction work was stopped by the order of defendants herein, plaintiff herein, pursuant to the terms of said contract, furnished work, labor, materials and supervion of and for the construction, repair and remodeling work done upon said premises, the total reasonable and agreed value of which amounts to the sum of Thirty-seven Hundred Fifty-three and 91/100 ($3,753.91) Dollars, an itemized statement of which appears more fully in the annexed copy of the lien filed herein marked Exhibit 'B' and for all purposes made a part of this complaint; that no part of said sum has ever been paid by defendants to this plaintiff though demand therefor has been frequently made, and the said sum and the whole thereof is now due, owing and unpaid from defendants to this plaintiff, together with interest thereon at the rate of six per cent. per annum from and after January 24, 1941;'' and (3) that since the complaint alleges and the lien shows that on January 24, 1941, the contract was terminated in accordance with its provisions, there can be no cause of action on the contract and no lien based thereon. In none of these contentions is there any merit.

The plaintiff, Lester H. Smith, a builder, became entitled to a lien upon the Gunniss property for the work, labor and materials which he supplied thereon pursuant to section 8339, Revised Codes of Montana of 1935, which provides: ''Every * * * foreman, * * * builder, * * * workman, laborer, and any other person, performing any work and labor upon, or furnishing any material, machinery or fixture for, any building, structure, * * * city or town lot, * * * or any improvements, upon complying with the provisions of this chapter for his work or labor done, or material, machinery or fixtures furnished, has a lien upon the

property upon which the work or labor is done or material is furnished."

Within the statutory time allowed therefor, the plaintiff filed and perfected his lien as is provided for in section 8340, Revised Codes of Montana of 1935. Thereafter within the time and in the manner provided by statute, this action was commenced for the express purpose of foreclosing the mechanics' and materialmen's lien which plaintiff had theretofore perfected.

Under our statutes, the right of a mechanic or a materialman to a lien on property upon which he has supplied work, labor or materials is not dependent upon whether the contract with the owner of the property is written or oral or whether it is express or implied. (*Black* v. *Appolonio,* 1. Mont. 342, 346.) Our lien statutes are remedial. They are for the express purpose of providing for the payment of the claims of builders, mechanics and materialmen out of the property to which their work and material have contributed an increased value. For these reasons, this court has long been committed to the view that the lien statutes should be given full effect and that they should receive a liberal construction so that the objects and purposes of such statutes may be carried out. (*Caird Engineering Works* v. *Seven-up Gold Mining Co.,* 111 Mont. 471, 479, 111 Pac. (2d) 267.) "This lien [mechanics'] is a creature of the statute, and was not recognized at common law. It may be defined to be a claim created by law for the purpose of securing a priority of payment of the price and value of work performed and materials furnished in erecting or repairing a building or other structure, and as such it attaches to the land as well as the buildings erected thereon. (15 Amer. & Eng. Enc. Law, 5.) *Now, it is not the contract for erecting or repairing the building which creates the lien, but it is the use of the materials furnished and the work and labor expended by the contractor, whereby the building becomes a part of the freehold, that gives the materialman and laborer his lien under the statute.* The lien is brought in operation by virtue of the

statute, and the contract for building is entered into presumably in view of, or with reference to, the statute." (*Van Stone* v. *Stillwell & Bierce Mfg. Co.*, 142 U. S. 128, 12 S. Ct. 181, 183, 35 L. Ed. 961, 964.) (Emphasis ours.)

The original agreement of November 2, 1940, provided that the "contract shall be completed by, not later than, December 20, 1940." Subsequent to the commencement of the construction work, frequent changes were made by Mr. and Mrs. Gunniss in the construction plans and these changes so made by them occasioned considerable delay and necessitated considerable additional work, materials and expense. The plaintiff testified that he continued with the construction work on the Gunniss home subsequent to December 20, 1940, and up to January 24, 1941, with the consent of defendants and that at various times during such period defendants informed him what they desired done in connection with the work and that their orders were carried out and that the work continued under their direction up to January 24, 1941. Where owners thus permit the builder to continue with the work after the expiration of the time fixed in the contract for the completion thereof, such conduct on the part of the owners amounts to an election to go on with the contract rather than to forfeit it and, on the completion of the work, the owners are liable for the price. (*Wortman* v. *Montana Cent. Ry. Co.*, 22 Mont. 266, 289, 56 Pac. 316; *Van Stone* v. *Stillwell & Bierce Mfg. Co.*, supra.) By their conduct did the defendants waive the date for completion of the contract originally specified therein and the situation thereafter was the same as if the extended time had been originally fixed in the contract.

The original agreement provided that the "contractor isn't to receive *any money* until such time as said contract is terminated by the owner." The contract also contained the provision: "This contract may be terminated by the owner at any time that he may feel that the work is not properly progressing or that it is to his benefit to terminate said contract. * * * It is understood that all work shall be done in

a workmanlike manner and that the owner upon completion will sign a Title One Federal Housing note in the amount due."

The defendants urge that under the above provisions payment was to be made to the contractor at such time as said contract is terminated by defendants by the signing of a Title One Federal Housing note in the amount due rather than in the payment of *money,* and that since the complaint does not allege that the defendants refused to give the note required under the contract or that demand was made therefor the complaint fails to state a cause of action. This contention is without merit. (*Van Stone* v. *Stillwell & Bierce Mfg. Co.,* supra.)

By agreeing that "the contractor isn't to receive any *money* until such time as said contract is terminated by the owner," the parties most certainly did not intend that the contractor was never to receive any *money* for the cash outlay which he was to make in paying for the labor performed and the materials used in the improving of the Gunniss home. The above quoted provisions in the agreement are simply to the effect that pay day, for the contractor, arrives upon the happening of either of two contingencies, viz., (1) upon the completion of the contract, or (2) upon the sooner termination of the contract by the owners. According to the agreement, any time that the owners should decide that it was to their benefit to terminate the contract, they were privileged to end it. The owners knowingly accepted the benefits of the construction work which was in progress on their home from November 7, 1940, to January 24, 1941. They could have waited for the completion of the contract but instead they exercised their option to terminate the contract prior to its completion. When they exercised such option so given them by the agreement and terminated the contract, then and thereby *the money* which the Gunnisses were owing to the contractor Smith for the labor, materials and supervision that he had supplied became due and payable. Payment is presumed to be made *in money* unless an intent to the contrary is shown. The provision for the signing of the Federal Housing note "upon completion" of the

contract was simply the means agreed upon for the obtaining, by the owners, of the necessary *money* to finance and pay for the construction work so that "upon completion" *the money* would be available with which to pay the constractor what should then be due him. Mr. and Mrs. Gunniss were certainly not relieved, by such provision, from their obligation to pay the contractor *the money* which was owing to him when they terminated their contract with him.

"One who prevents or makes impossible the performance ▪ or happening of a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of its non-performance. In other words, he who prevents a thing from being done shall never be permitted to avail himself of the non-performance which he himself has occasioned." (12 Am. Jur., sec. 329, p. 885.)

"The abandonment of an improvement before the comple-▪ tion thereof, by the owner of the premises, without fault on the part of the contractor, does not abrogate the right of the contractor, laborers, and material men to mechanics' liens for the value of the work done and the material furnished. In such case, the building or improvement is to be deemed completed, so far as the rights of persons to assert liens is concerned." (36 Am. Jur., sec. 35, p. 38.)

The allegations of the complaint above quoted are proper ▪ averments under section 9170, Revised Codes, which provides: "In pleading the performance of conditions precedent in a contract, it is not necessary to state the facts showing such performance, but it may be stated generally that the party duly performed all the conditions on his part, and if such allegation be controverted, the party pleading must establish, on the trial, the fact showing such performance." Clearly, the complaint herein is sufficient to state a cause of action for the foreclosure of plaintiff's lien. (*Doney* v. *Ellison,* 103 Mont. 591, 64 Pac. (2d) 348; *Wertz* v. *Lamb,* 43 Mont. 477, 117 Pac. 89; *Bardwell* v. *Anderson,* 13 Mont. 87, 32 Pac. 285; *Andersen* v. *Turpin,* Ore., 142 Pac. (2d) 999 (not yet reported in State report).

On November 2, 1940, when the plaintiff Smith prepared and ██ ██ the defendants Gunniss signed the cost-plus agreement, Smith was then the manager at Great Falls for Coast Engineering Company, an Oregon corporation, which company was named in the agreement as the contractor. On November 20, 1940, being thirteen days after Smith had commenced the construction work on the Gunniss dwelling, the plaintiff Smith bought a considerable quantity of building material which Coast Engineering Company then had on hand and took over the performance of all that company's contracts covering the state of Montana. Coast Engineering Company on that date executed and delivered to the plaintiff Lester H. Smith a bill of sale covering such transfer to him of the materials and contracts, in consideration of the manager, Smith, releasing Coast Engineering Company from the payment of any reserve and salary due him as well as any other debts due by said corporation to Smith. Upon receiving such bill of sale, the plaintiff Smith advised the defendants Gunniss of his taking over of the said contracts of Coast Engineering Company and, with the defendants' consent, the plaintiff Smith continued the construction work on the Gunniss building under the name of Kraft Construction & Materials Company, employing identically the same men on the job as were theretofore employed thereon. Defendants urge that Smith may only claim a lien for the labor and materials supplied from November 20, 1940, the date of the bill of sale to him, to January 24, 1941, when the contract was terminated. They further assert that because Smith included in his claim the sums which he had personally paid from his personal funds for labor and materials supplied during the first thirteen days when the contract stood in the name of Coast Engineering Company that thereby his entire lien is destroyed. The mere fact that a notice or claim of lien may include some items which are lienable and other items which are not or the fact that the claim may be made for a larger amount than the claimant shows himself entitled will not vitiate or destroy the lien for the amount actually due the claimant in

the absence of a fraudulent intent in the filing of the lien. (*Mason* v. *Germaine,* 1 Mont. 263, 271; *Black* v. *Appolonio,* supra; *Caird Engineering Co.* v. *Seven-up Gold Mining Co.,* supra.)

The instant case presents not merely one of assignment of the claim of a mechanic or materialman after the completion of the work and before the lien has been actually filed, but it presents a situation where the plaintiff Smith has entirely taken over the construction job which was commenced under his management and which continued to progress under his management with the knowledge and consent of the owners and under their direction. The plaintiff was on the job from the very beginning. It was Smith to whom Mr. and Mrs. Gunniss first talked with respect to the construction work which they desired done. He prepared the contract which the Gunnisses signed. He personally managed and supervised the work from the day it commenced on Novermber 2, 1940, to the day the defendants terminated the contract on January 24, 1941. He took over from Coast Engineering Company the building materials and the uncompleted contracts covering the state of Montana. He contracted for and personally paid from his personal funds the various items of labor and materials, set forth in his claim for lien, that went into the construction work on the Gunniss property. Such bills were paid by Smith irrespective of whether the labor and materials had been charged to Coast Engineering Company or to Kraft Construction & Materials Company. The Gunnisses, as owners of the property, consented that Smith be substituted as the original contractor and, with defendants' full assent and approval the work went forward under Smith's management. By this substitution of a new creditor (Smith) in place of the old creditor (Coast Engineering Company) with intent to transfer the rights of the old creditor (Coast Engineering Company) to the new one (Smith), a novation was made. (Sec. 7461, Rev. Codes). The Gunnisses may not, after so consenting to the new arrangement and after knowingly accepting the advantages and benefits thereof now, in defense

of this action and to defeat the builder's lien, question the builder's right to include in his claim the labor and materials which he supplied on the Gunniss home during the first thirteen days that the construction work was in progress. As was said in *Pensacola R. Co.* v. *Schaffer,* 76 Ala. 233, 237: "The plaintiff entered upon the performance of his agreement, upon the faith of the promise that he was to be dealt with as 'the original contractor.' Having completed the work, upon the assumed truth of the defendant's covenant in this particular, nothing can now be asserted to the contrary, which would operate to the prejudice of the plaintiff. The defendant is clearly estopped from now denying that the plaintiff is an original contractor." (See also: *Smoot* v. *Checketts,* 41 Utah 211, 125 Pac. 412, Ann. Cas. 1915C, 1113; *Iaege* v. *Bossieux,* 15 Grat. 83, 56 Va. 83, 76 Am. Dec. 189; *Schalk v. Norris,* 7 Misc. 20, 27 N. Y. Supp. 390; *Boyer* v. *Keller,* 258 Ill. 106, 101 N. E. 237, Ann. Cas. 1916B, 628; *Peatman* v. *Centerville Light, Heat & Power Co.,* 105 Iowa 1, 74 N. W. 689, 67 Am. St. Rep. 276; *In re Assignment of Minor Fire Clay Co., 1900,* 7 Ohio N. P. 557, 9 Ohio Dec. 627; *Zuelka* v. *American Refrigeration Mfg. Co.,* 15 Ohio App. 10; *Braden Co.* v. *Lancaster Lumber Co.,* 170 Okl. 30, 38 Pac. (2d) 575, 102 A. L. R. 230; *Central Finance Corp.* v. *Brown,* 175 Okl. 528, 54 Pac. (2) 196; *Mitchell* v. *Shoreridge Oil Co.,* 24 Cal. App. (2d) 382, 75 Pac. (2d) 110, 77 Pac. (2d) 221.) The rule is stated in 40 C. J., section 409, page 311: "Where a building contract is assigned before completion, and completed by the assignee, the latter may file and enforce a lien in his own name as the effect of assignment was to substitute him as original contractor, and the owner consented to such substitution."

Defendants assert that they are relieved from liability on their contract because plaintiff failed to pay for the labor and materials supplied for the job by three materialmen, viz.: (1) St. Anthony and Dakota Lumber Company, $31.50 for a door; (2) Rowe Electric Company, $140 for wiring, fixtures and electrical work; and (3) the intervener Pinski Brothers,

Inc., $1,138.80 for plumbing and heating. Had plaintiff paid the claim of Pinski Brothers, Inc., then he could have included same in his lien and suit herein and a separate judgment would not then have been entered for intervener as was done in the instant case. So with the other two claims—had plaintiff paid them, then he would have simply added the amounts of such payments to his own claim and lien plus ten per cent. for plaintiff's services and supervision. Since the plaintiff did not pay the three claims in question, the defendants are obligated to pay the materialmen the respective amounts thereof. No loss or prejudice to defendants results from plaintiff's failure to pay the three claims. By terminating the contract before its completion, the defendants abandoned the improvements and same are deemed completed as far as concerns the right of the plaintiff builder to assert his lien under section 8339, Revised Codes. (36 Am. Jur., sec. 35, p. 38.) "If one party to a contract makes it impossible for the other party to perform the contract or delays the performance of it, the party who thus makes performance impossible on the part of the other, can not treat the default of the adversary party, which is thus caused, as discharging him from liability. The party who is prevented from performing further may recover damages for the breach of that contract, or compensation for what he has done without performing fully." (5 Page on The Law of Contracts, 2d Ed. sec. 2922, pp. 5152, 5153.)

Defendants complain that a lock, a door, ten sheets of tempered board, twenty feet of beading and some neo-tyle were included in plaintiff's claim but that same were not actually used in the construction work. These matters were taken into account and considered by the trial court which allowed a deduction of $121.74 therefor before rendering judgment for plaintiff herein, hence again no prejudice resulted to defendants on this score.

Defendants contend that the provision in the contract "that the owner upon completion will sign a Title One Federal Housing note in the amount due" fixes the maximum cost of

the construction at $2,500 for the reason that $2,500 is the maximum amount of such a note under 12 U. S. C. A. section 1703. The plaintiff testified that he estimated the cost of the work about which the defendants first talked with him at from $2,500 to $3,000 but that he declined to enter into any fixed price contract for the job, and this is corroborated by the fact that the agreement which the parties finally executed is purely a cost-plus contract. It is also undisputed that as the work progressed, changes were made in the plans from time to time by the defendants which changes would necessarily change the cost of the construction. The plaintiff testified that on December 13, 1940, he presented defendants with a statement showing expenditures of $2,900 as of that date, yet defendants acquiesced in the continuation of the construction work to January 24, 1941. Assuming, without deciding, that the original contract contemplated a maximum expenditure of $2,500, yet by their subsequent conduct the defendants waived and abandoned such provision. For a similar case see *Union Supply Co.* v. *Morris,* 220 Cal. 331, 30 Pac. (2d) 394.

During the trial both defendant and plaintiff made various motions and interposed numerous objections to offered evidence upon which the trial court reserved its rulings. These rulings were still reserved and undisposed of when the trial ended. Defendants assign eight specifications of error upon the failure of the trial court to rule upon the motions and objections so made. While this court has heretofore criticized the practice of admitting evidence subject to the objection or on which the court reserves, but never makes, its ruling (*Gilcrest* v. *Bowen,* 95 Mont. 44, 24 Pac. (2d) 141; *Langston* v. *Currie,* 95 Mont. 57, 26 Pac. (2d) 160; *Frisbee* v. *Coburn,* 101 Mont. 58, 52 Pac. (2d) 882), yet, in the absence of a showing of actual prejudice resulting from such practice, we are not justified in reversing a judgment and thus subjecting the parties to the inconvenience and expense attendant to a new trial, simply because the condemned practice was indulged by the trial court. The

evidence amply supports the judgment for plaintiff and it is ordered affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANDERSON and ERICKSON concur.

MR. JUSTICE MORRIS:

I concur in the result in the foregoing opinion but not in all that is said therein.

This is an action to foreclose a mechanic's and materialman's lien and too much emphasis is given to the written contract originally entered into. By paragraph 4 of the complaint and by arguments of counsel it appears that the original written contract was altered by subsequent oral understandings, and the cost of the improvements heavily increased. Such alterations in the contract were made prior to performance of things to which they related and such alterations were not made in writing in accordance with section 7569, Revised Codes, which provides: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." Such being the law in the premises, the original written contract was improperly given any consideration, except that it might have been introduced in evidence to show the understanding as to the wages to be allowed the workmen it was necessary to employ in making the improvements and likewise to fix the percentage to be allowed the contractor on the cost of material and labor, if such questions had been made an issue in the case.

Rehearing denied January 11, 1944.