LOUIS M. MITCHELL and MARGARET C. MITCHELL, HUSBAND AND WIFE, PLAINTIFFS AND RESPONDENTS, *v.* A. F. CARLSON, DEFENDANT AND APPELLANT.

No. 9430.

Submitted May 6, 1957. Decided July 9, 1957.

313 Pac. (2d) 717.

Mr. Eugene H. Mahoney, Thompson Falls, for appellant.

Mr. A. S. Ainsworth, Thompson Falls, for respondent.

MR. CHIEF JUSTICE HARRISON:

The plaintiffs in the lower court purchased a residence in July 1952 from A. F. Carlson, the defendant, for $11,000, entering into an oral agreement that they would pay $6.500 down,

balance to be paid when the house was completed and plaintiffs moved in. The plaintiffs however paid the balance before completion and moved into the house. The house was completed shortly thereafter with the exception of constructing the front steps and sidewalk, which work it was agreed would be done in the spring.

After plaintiffs had moved into the dwelling, complaint was made to defendant that a crack had developed in the bedroom and that nail heads and stripping over the seams in the sheet-rock in the living and dining room were visible; that the ceiling in this room had sagged in one place; that the plastic tile in the bathroom and kitchen commenced to curl and peel off the base, and some of the doors would not close properly; that the cupboard doors fit improperly and would not close; and that there were numerous other defects in the house.

Defendant contends that he offered to correct these defects immediately or in the spring, whichever was agreeable to plaintiffs, and he and Mr. Mitchell agreed that the work would be done in the spring. This, however, Mr. Mitchell could not recall at the time of the trial. Mrs. Mitchell denied any such agreement.

At the time the tile peeled in the bathroom, defendant went to Missoula and returned with sufficient tile to re-do the bathroom floor, but Mrs. Mitchell would not accept the tile because she contended that the agreement called for roll-type inlaid linoleum.

Although plaintiffs and defendant consulted in regard to correcting the defects, no agreement could be arrived at because the manner in which defendant wished to cure them was not suitable or satisfactory to plaintiff.

In March 1953, Louis M. Mitchell demanded $3,000 from defendant to compensate for the defects and poor material used in the home. This, defendant refused to pay and this action was instituted.

Plaintiffs, in their amended complaint, alleged that defendant "promised and agreed to furnish and construct a modern home,

4

complete in every detail, and to use first-class lumber and material throughout the dwelling'' for the sum of $11,000, and that ''immediately after moving into said dwelling,'' they discovered, ''from an examination thereof, that the house was constructed of cheap and inferior materials, and that all the carpenter work and finishing was poorly and inadequately done,'' and that defendant refused to change, remodel or complete the dwelling in the manner agreed. Plaintiffs set forth a detailed list of the defects and omissions for which they brought this action. Plaintiffs then alleged that in order to make the dwelling conform to the specifications agreed upon, it would cost the plaintiffs at least $3,000, and in addition it would cost at least $250 to construct the front steps and sidewalk. Defendant demurred to this amended complaint both specially and generally, which demurrers were overruled.

Defendant in his answer admitted some of the defects and omissions complained of, and alleged that he had always been ready and willing to correct these defects and omissions, but had been prevented from so doing by the plaintiffs, and particularly by the plaintiff, Margaret C. Mitchell.

Upon the trial, plaintiffs testified to the defects and omissions complained of, admitted that defendant had offered to remedy those defects, but testified the manner in which he wished to remedy them did not conform to the specifications orally agreed upon and refused to allow him to do any further work upon the house. They also admitted that they had agreed to allow defendant to build a sidewalk and steps in the spring, but that after discovering the defects and omissions complained of in the complaint no longer felt him qualified to do the work.

To support plaintiffs' testimony a former contractor, Leo Redding, a carpenter of some sixteen years experience, testified as to the defects and his estimate of the cost of repairing them. He enumerated the cost of repairs as to each specific item: allocating $1,200 to $1,500 for repairing the sheetrock; $200 for repairing the floors; $20 to replace two doors plus cost of installation; and $50 for new linoleum in kitchen and bath-

room. He made no estimate as to the cost of repairing the cupboards, bathroom tub or building the sidewalk and steps. Two other persons testified as to the existence of the defects; one, Mr. Buchanan, an electrician and plumber, experienced in the building trades, testified the only way he knew of to correct the defects in the sheetrock was to tear it down and put it up new.

Defendant in his testimony contradicted plaintiffs' and their witnesses' testimony as to the method of repairing the defects and as to the cost of repair.

The jury returned a verdict in favor of the plaintiffs in the sum of $2,000, and judgment was entered thereon from which this appeal was taken.

The defendant alleges four specifications of error: (1) The court erred in giving plaintiffs' proposed instruction No. 2, given as court's instruction No. 4; (2) The judgment is contrary to the law and evidence; (3) The evidence was insufficient to substantiate the verdict; and (4) Misconduct on the part of counsel for plaintiffs and the court. We shall consider them in this order.

The first specification of error is that the trial court erred in giving instruction No. 4, reading:

"You are instructed that if you find from a preponderance of the evidence in this action that plaintiffs are entitled to damages, then in arriving at the measure of damages, it is the amount which will compensate the plaintiffs for all detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom, or which has resulted therefrom."

The defendant excepted to this instruction on the grounds it was too broad and would allow the jury to "compensate for damages not alleged or prayed for in the amended complaint." Defendant cites in support of his contention the following quotation from Montgomery v. Karavas, 45 N.M. 287, 114 Pac. (2d) 776, 781:

"Where the contractor fails to keep his agreement, the measure of the employer's [owner's] damages, whether sought in

an independent action or by recoupment or counterclaim, is always the sum which will put him in as good a position as if the contract had been performed. If the defect is remedial from a practical standpoint, recovery generally will be based on the market price of completing or correcting the performance, and this will generally be shown by the cost of getting work done or completed by another person. * * * 5 Williston on Contracts, Sec. 1362.''

While defendant may be correct in stating the above as the generally accepted measure of damages for breach of a construction contract, it does not necessarily follow that the one given is erroneous.

R.C.M. 1947, section 17-301, provides the following as the measure of damages for breach of contract:

''For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.''

Examining the court's instruction in the light of the statute, it is apparent that it was phrased in the words of the statute and contains essentially the same criterion upon which damages for breach of contract are based. Although the codes specify damages for breaches of other types of contract there is no express provision for damages in breach of construction contracts.

The above section was applied in the recent case of Hein v. Fox, 126 Mont. 514, 254 Pac. (2d) 1076, 1079. In that case the contract called for the defendant to drill a water well for plaintiff. He failed to do so, the court instructed the jury that they could find for plaintiff up to the sum of $1,650; they returned a verdict for $1,000. On appeal this court held that R.C.M. 1947, section 17-301, was the proper measure of damages to be applied for failure of the defendant to comply with the contract.

In McFarland v. Welch, 48 Mont. 196, 136 Pac. 394, the court said R.C.M. 1947, section 17-301, then section 6048, R.C.M. 1907, was the proper measure of damages to be applied to compensate plaintiff for the difference between the contract price and the expense to him of doing the work.

Applying the statutory rule of damages to this case it is apparent that plaintiffs will be compensated only for the ''detriment proximately caused'' by the breach, viz., the cost of making the repairs necessary to complete the house in accordance with the parties' agreement. The phrase ''proximately caused'' restrains the jury from awarding damages beyond the amounts proven in the evidence at the trial resulting from defendant's breach of contract.

The supreme court of Oklahoma applied a statute almost identical to R.C.M. 1947, section 17-301, in the case of National Surety Co. v. Board of Education, 62 Okl. 259, 162 Pac. 1108. That case involved an action for breach of a builder's contract because the builder had failed to perform the contract by using defective materials. The court, in affirming recovery, said that the statute was merely declaratory of the common law for breach of contract and compensated plaintiff only for the detriment caused by defendant's breach of contract, viz., the cost of repairs.

Assuming, arguendo, the instruction as drawn is too broad in its application, it cannot be singled out as prejudicial, however if construed in the light of the other instructions given it is a fair statement of the law. McGonigle v. Prudential Ins. Co., 100 Mont. 203, 46 Pac. (2d) 687; Jewett v. Gleason, 104 Mont. 63, 65 Pac. (2d) 3.

The court in its first instruction to the jury paraphrased plaintiffs' complaint and prayer for damages, expressly setting out the various defects in the dwelling complained of, and concluded with the statement that if the jury found that defendant had not complied with the contract, and that the allegations set forth in the amended complaint were true then they

8

should find a verdict for plaintiffs not to exceed the amount prayed for, $3,250.

The court in its second instruction again stated that a verdict for plaintiffs should only be founded upon the failure of the defendant to perform the contract. It is evident that the measure of damages as set forth in the fourth instruction is confined to those elements of damages complained of and proven at the trial, since nowhere in the instructions can there be found any additional basis upon which the jury could base their verdict.

Defendants' second specification of error was to the effect the judgment was contrary to the law and the evidence. His grounds for this contention are: (1) That the plaintiffs knew of the defects in the dwelling when they moved in, therefore they are considered to have waived them; (2) Plaintiffs had hindered his offer to remedy these defects by refusing to allow him to repair the dwelling.

The court instructed the jury that if the plaintiffs knew of the defective work when they moved in, accepted the work and paid for it, then as to such defective work no complaint can thereafter be made nor damages assessed. This rule of law was set forth in the case of Ekstrand v. Barth, 41 Wash. 321, 83 Pac. 305, 306.

However waiver is a question of fact, depending upon the circumstances of each case, and this is to be referred to the jury. Zambakian v. Leson, 77 Colo. 183, 185, 234 Pac. 1065, 1068. Mere payment and moving in does not impart knowledge of the defects to the plaintiff, nor by such action do they waive the defects. Franklin v. Schultz, 23 Mont. 165, 57 Pac. 1037; Higby v. Hooper, 124 Mont. 331, 221, Pac. (2d) 1043.

In the latter case the court quoting from 9 Am. Jur., Building and Construction Contracts, section 53, page 40, n. 7, to illustrate the above rule stated:

"According to the weight of authority, the mere occupancy and use by plaintiffs of their unfinished dwelling do not con-

stitute an acceptance of the work as complying with the contract, or amount to a waiver of defects therein.''

Applying the authorities to the present case it becomes apparent that defendant's contention that the plaintiffs waived the defects when they moved in because of knowledge thereof is a question for the jury, and that plaintiff's mere occupation and payment alone are not sufficient to impute knowledge of the defects to them. The testimony at the trial was conflicting as to when the defects were first noticed, but if plaintiffs' testimony is believed the majority of them showed up after the plaintiffs had paid defendant and after they had moved in. Rationalizing this conflict in the testimony is a question for the jury and where there seems to be sufficient evidence to sustain the verdict this court will not reverse. In view of the conflict in the evidence it was clearly permissible for the trial jury to find for plaintiffs on this point.

The court also instructed the jury that ''* * * nonperformance of a contract in accordance with its terms is excused where performance is prevented by conduct of the adverse party.'' Chilton v. Oklahoma Tire & Supply Co., 180 Okl. 39, 67 Pac. (2d) 27, 29, quoting from 6 R.C.L. 1012. Although this is a correct statement of the law we cannot see its application to the present case.

In those cases which apply the rule of law as set down in the above instruction the facts are clearly distinguishable from those in the case before us. The majority of those cases involve fact situations where the contract has not been entirely performed on both sides, or where the contract is executory, or where the first breach was occasioned by the party hindering performance. Eggers v. General Refrigeration Co., 123 Mont. 205, 210 Pac. (2d) 636; Smith v. Gunniss, 115 Mont. 362, 144 Pac. (2d) 186, 191; and compare Briney v. Toews, 150 Kan. 489, 95 Pac. (2d) 355.

In Smith v. Gunniss, supra, a case involving the construction of a house, the vendee had paid no money on the purchase price and had stopped plaintiff contractor from completing the

dwelling. It was held that this rule of law was applicable. But this is clearly distinguishable from the present case.

Here the plaintiffs had completely performed their part of the agreement by paying defendant $11,000. Defendant had purportedly completed the house, except for the sidewalk and steps, and when the defects began to appear in plaintiffs' dwelling they had a cause of action for breach of contract because defendant had failed to conform to the specifications called for by the agreement. He admitted in his answer certain of the defects complained of. Where there has been an actual breach of contract, the plaintiffs' right of action accrues, and cannot be defeated by a subsequent offer to perform, where performance appears unlikely. Levine v. Reynolds, 143 Me. 15, 54 A. (2d) 514, 518; Coughlin v. Blair, 41 Cal. (2d) 587, 262 Pac. (2d) 305; Lorden v. Snell, 39 Ariz. 128, 4 Pac. (2d) 392, 394.

When defendant failed to build the house in a workmanlike manner and with good materials, the cause of action for breach of contract arose and plaintiffs were not compelled to accept any further performance on the part of defendant when there was no assurance that such would measure up to the agreed upon standard. If past performance be any indication at all, it would negative any presumption that plaintiffs could rely upon defendant to do a good, workmanlike job. Coughlin v. Blair, supra; Lorden v. Snell, supra; Levine v. Reynolds, supra; Nance v. Patterson Bldg. Co., 140 Ky. 564, 131 S.W. 484; and 12 Am. Jur., Contracts, section 336, pages 982, 893.

In the third specification of error defendant contends the evidence was not sufficient to substantiate the verdict. This specification is based upon plaintiffs' alleged lack of evidence and competent testimony as to the amount of damages.

Leo Redding, who had been a contractor and carpenter for sixteen years, testified, as set out in this opinion what he estimated to be the cost of repairs to the plaintiffs' house in the manner he would make the repairs. It was up to the jury to determine whether his method was the proper one. Big Chief

Sales Co. v. Lowe, 178 Kan. 33, 43, 283 Pac. (2d) 480. In view of Redding's testimony, who was an expert, we cannot see that any substantial rights of plaintiffs have been prejudiced.

Defendant also objected to Redding's testimony because he ■ (Redding) had inspected the house nearly a year after the defects appeared, but this merely goes to the weight of his testimony, not its competence. Totten v. Stewart, Ky. 1955, 286 S.W. (2d) 539, 541.

In the Montana case of Nesbit v. City of Butte, 118 Mont. 84, 163 Pac. (2d) 251, 255, Mr. Justice Cheadle quoting from Corpus Juris Secundum in the opinion of the court stated:

" 'A witness experienced in a building trade, and who is shown to have had sufficient opportunity for observation, and to be adequately qualified to form a judgment as to the matter of which he undertakes to speak, may testify as to his inferences or judgment as to matters in his particular department.

" 'The statement may relate to various matters connected with construction, condition, or repair of buildings, such as the cost of a house or other building, or of repairs thereto, or of other work in connection therewith.' 32 C.J.S. Evidence, section 546, page 326, and cases cited."

It is apparent Redding's testimony falls within the scope ■ of this rule.

As to the question of whether the work was done in a work-■ manlike manner or with good materials, it is generally held these are all questions within the province of the jury and are to be submitted to them for deliberation. Zambakian v. Leson, supra; Armstrong v. Wheeler, 86 Wash. 251, 150 Pac. 5; Big Chief Sales Co. v. Lowe, supra.

The fourth specification of error alleged by the defendant was the misconduct of the plaintiffs' attorney.

At the trial of the action plaintiffs' counsel in his closing ■ argument attributed testimony of Mr. Buchanan to Mr. Redding. Defendant objected thereto, but asked for no instruction to cure the defect. The trial record was read indicating counsel had made a mistake in that Mr. Buchanan instead

of Redding stated in his opinion the sheetrock in plaintiffs' house would have to be replaced. Reddings' testimony was to the effect the sheetrock would not have to be replaced but rather could be repaired.

Defendant contends this prejudiced his substantial rights because more weight would be given Redding's testimony by the jury than to Buchanan's. This seems farfetched considering the fact that plaintiffs in laying the foundation for Buchanan's testimony, elicited the facts that Buchanan had been an electrician and plumber in the building trades for a long time, and was familiar with the manner in which a dwelling, built with good materials and in a workmanlike manner, should look. It is hard to see how the jury could have been misled in view of the fact both men were experienced in the building trades, and the further fact that the correct testimony of Leo Redding was read to the jury after the objection had been made.

The judgment is affirmed.

MR. JUSTICES CASTLES, BOTTOMLY, ANGSTMAN and ADAIR, concur.