No. 13381

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

PRUDENTIAL FEDERAL SAVINGS AND LOAN et al.,

Plaintiff and Respondent,

-vs-

GLENN McDOUGALL et al.,

Defendants and Respondents,

-vs-

BUILDING AGENCIES, INC., a corporation,

Third-Party Defendant and Appellant.

---

Appeal from:  District Court of the Fifth Judicial District,
              Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

    For Appellant:

        Robert P. Ryan argued, Billings, Montana

    For Respondents:

        McCaffery, Peterson and Murray, Butte, Montana
        W. D. Murray, Jr. argued, Butte, Montana
        Chester Lloyd Jones argued, Virginia City, Montana

---

Submitted:  June 6, 1977

Decided:  AUG 2  1977

Filed:  AUG 2  977

*Thomas J. Kearney*

Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

Building Agencies, Inc., appeals from a judgment of the district court, Madison County, for $2,858.40 plus attorney fees of $250 and court costs, and for additional attorney fees of $250 adjudged upon a third party complaint.

Defendants McDougall arrived in Sheridan, Montana from Regina, Saskatchewan, February 3, 1967, and purchased a log house south of Sheridan.

In July 1967, they were contacted by a salesman for Building Agencies, Inc. The solicitation by the Agencies' agent was to refurbish the exterior of the log home by coating it with a plastic coating carrying the trade name of Tex-Cote.

On July 26, 1967, McDougalls and Agencies entered into an agreement to apply the coating as specified for the agreed sum of $2,850 with $50 paid in advance.

As a part of the agreement Agencies was to secure financing, which it did, through Prudential Federal Savings and Loan Association. On August 7, 1967, McDougalls signed a note, the subject of this action, running to Agencies in the amount of $2,998.80 to be paid in 96 monthly installments of $45.50, commencing October 7, 1967. Agencies immediately assigned the note to Prudential and Prudential issued its payment to Agencies in the amount of $2,800.

The work was completed by Agencies within a few days and McDougalls made the first $45.50 payment on October 12, 1967. Payments were made each month thereafter until January 1969, when only $23. was paid; March 10, 1969 when $20 was paid; March 20 when $20 was paid; (oddly enough, according to the exhibit received

at trial, this $40 was credited to reduce principal); on May 26, 1969, $20 was paid and credited to interest and the final payment of $20 was paid on June 18, 1969, credited to interest for a balance owing on June 18, 1969 of $2,684.71.

During the time January 1969 to at least May 25, 1969, Waneta McDougall's response to Prudential's requests for payment was that the McDougalls were having financial problems but "we shall get these paid as soon as possible."

She testified she complained of cracking and peeling of the coating to Prudential, and Prudential on July 9, 1969, wrote McDougalls that Prudential was "going to get in touch with the dealer regarding his workmanship." The trial judge found that within a year after application Agencies' work proved improperly performed.

In the agreement of July 26, 1967 Agencies agreed to perform much preparatory work. In Agencies' brief this is set out:

> "The contract called for extensive preparation of the log surfaces, including sandblasting, silicone waterproofing, sealer coat and other measures and then a final coat of Tex-cote, a plastic material.
>
> "* * * Tex-Cote's full guarantee, with underlining added, reads:
>
> "'This is to certify that the Tex-Cote applied on the above property is hereby guaranteed for a ten year period against flaking, chipping or peeling. This guarantee is to be in force for a period of ten years from the registration date (Date of Application) and full material replacement shall be made should this replacement be necessary as a result of a defect in this product only. * * *
>
> "'. * * *'
> "Building Agencies warranted the workmanship. The contractual provision (underlining added) reads:
>
> "'(1) Tex-Cote is guaranteed by Textured Coating of America., Inc. and no warranty or guaranty is made by Building Agencies, Inc. Building Agencies, Inc. does warrant the workmanship for a period of one year from the

- 3 -

date of completion of the work. <u>The warranty
of workmanship is expressly limited to correc-
tion of the work</u> which will be done promptly
after written notice of defective work is received
by Building Agencies, Inc. <u>Building Agencies,
Inc. shall have no liability for consequential
damages, or any other liability not herein expressed.</u>'"

McDougalls refused further payments after June 18, 1969
assigning as their reason Agencies' failure to perform the work
and labor set out in the agreement in a satisfactory manner.

Prudential filed suit against McDougalls on December 18,
1969. McDougalls answered and filed a third party complaint
against Building Agencies, Inc. The third party complaint and
summons thereon was served on Agencies' president January 14,
1971.

Shortly thereafter Waneta McDougall returned home to find
a "machine" in her yard. According to her testimony she did not
know who it belonged to or why it was there. She called the
sheriff to have it towed away. She later learned the machine
belonged to Agencies and was there to patch up the work. Her
uncontradicted testimony was: "He said it was to patch up the job,
is his words." She refused.

The matter went to trial before the court without a jury.
After testimony, the court granted summary judgment to Prudential
against McDougalls in the amount of $2,858.40 plus $250 attorney
fees and costs.

The trial court further found:

"* * * that the Defendants, GLENN and WANETA McDOUGALL,
have judgment against the Third Party Defendant, BUILDING
AGENCIES, INC., as follows:

"(1) For the sum of Two Thousand Eight Hundred
Fifty Eight and 40/100 Dollars ($2858.40) plus Two
Hundred Fifty Dollars ($250.00) and Court costs as
provided for in the Judgment against the Defendants
[McDougalls] above.

- 4 -

"(2) For attorney fees in the amount of Two Hundred Fifty Dollars ($250.00)."

The issues on appeal are:

(1) Whether Agencies' warranty limited to "correction of the work", limits the remedy of the purchaser to correction of the work only?

(2) Can the purchaser prevent correction of the work and then refuse payment on the contract price on the ground the work is useless and there is a failure of consideration?

Both parties agree that Agencies warranted the work.

Agencies presented no testimony. McDougalls' expert testified that in May 1970 he inspected the house and the coating was deteriorating and coming off; that the "underpart of it showed the building had not been properly prepared for the product to adhere to it. * * * Due to foreign matter underneath the product is general reason for it not adhering to the building". Further, in his opinion, proper preparation was not done -- "* * *Why there was other foreign matter, paint, grease or something that had not been cleaned off so that paint did not adhere to it and it just came off in big flakes and I assume that that was due to some foreign matter being underneath the coating."

Agencies relies on section 87A-2-719, R.C.M. 1947, Montana's Uniform Commercial code, as to whether the agreement may limit the buyer's remedy and cites Mt. States Tel. & Tel. Co. v. District Court, 160 Mont. 443, 503 P.2d 526 as authority for its contention. See also: Whitaker v. Farmhand, Inc., _____Mont._____, _____P.2d _____, _____St.Rep._____, No. 13228, handed down by this Court on August 2, 1977, and cases cited therein.

- 5 -

The problem here is that no such issue is presented.

The trial judge found, based upon the only evidence presented, and this Court finds it to be substantial and credible, (McGuire v. American Honda Company, _____Mont._____, _____P.2d _____, 34 St. Rep. 632), that Agencies warranted and guaranteed its work and the work was improperly performed. Further, all the evidence in the record indicates failure to properly prepare the log surface was the cause of the Tex-Cote coating to chip, flake, and peel. Therefore, the question of limitation of remedies in the contract is not presented on this appeal. The cause of the defect was the breach of the express warranty.

As to whether Waneta McDougall prevented performance, again all is the evidence is that she did not. McDougalls' expert testified it would be necessary to clean the building and coat it with a primer and sealer and then repaint. These are the exact things Agencies agreed to do in the original agreement and, according to the only testimony presented, it did not do. There is no testimony Agencies in 1971 agreed to start over and re-do the job. Therefore that issue fails. Mitchell v. Carlson, 132 Mont. 1, 313 P.2d 717.

As a secondary issue the amount of the judgment is questioned. The prayer of Prudential was for $2,684.71, interest, costs and attorney fees. Summary judgment was granted. No appeal was taken from the summary judgment. Plaintiff states a balance of $2,684.71 as of June 18, 1969. From the pleadings, not amended, the most that could be awarded would be $2,684.71 plus interest.

There was no testimony as to attorney fees in the suit by Prudential against McDougalls, and there is no pleading or evidence of attorney fees by McDougalls against Agencies. Compton v.

Alcorn, _____Mont._____, 557 P.2d 292, 33 St.Rep. 1185; First

Security Bank of Bozeman v. Tholkes, ____Mont._____, 547 P.2d 1328,

33 St.Rep. 341.

Therefore, the judgment of the trial court is affirmed as

modified. The judgment for Prudential against McDougalls shall

be in the amount of $2,684.71, with interest from June 18, 1969

to March 19, 1976, together with interest at 6% on this amount

until paid.

Judgment shall be entered in the same amount against third

party defendant Building Agencies, Inc.

_____
Chief Justice

We Concur:

_____

_____

_____

_____
Justices.