MR. JUSTICE WEBER,
dissenting:
The letter of credit issued by First Security specifies that payment becomes due only upon unremedied default. I disagree with the majority’s conclusion that under the facts of this case, mere non-payment by Prospect constitutes “unremedied default” and automatically triggers liability on the letter of credit.
Section 30-5-114(1), MCA provides that an issuer must honor a demand for payment which complies with the terms of the relevant credit regardless of whether goods or documents conform to the underlying contract between the customer and beneficiary. Strict compliance with the terms of the letter of credit is required. Courtaulds North American, Inc. v. North Carolina National Bank (4th Cir. 1975), 528 F.2d 802, 805-06; White & Summers, Uniform Commercial Code Section 18-6 (2d ed. 1980).
As applied to the letter of credit involved here, Section 30-5-114(1) creates a significant contradiction because the triggering term of the letter of credit requires occurrence of an event in the underlying transaction. Thus, a determination that a demand for payment complies with the terms of the letter of credit requires a legal and factual analysis of the underlying transaction to ascertain whether the triggering event of “unremedied default” has occurred. The majority has assumed that the triggering terms of the letter of credit *418 are nonpayment by Prospect and notice of default to the Bank, even though the letter itself requires payment only upon unremedied default by Prospect. The letter of credit says “unremedied default,” not “nonperformance.”
The independent nature of the letter of credit means that liability of the issuer is determined by the terms of the letter of credit rather than according to the obligations and rights arising from the underlying transaction. However, the issuer and beneficiary may agree upon the triggering terms of the letter of credit and thus may agree, as here, that the triggering event will be an occurrence in the underlying transaction which will require some element of performance by the beneficiary. This does not mean that these prerequisites to payment arise from the underlying transaction; rather, for purposes of the letter of credit, they arise from the choice of terms and terminology employed in the letter of credit by the issuer and beneficiary. Here, a consideration of Sherwood’s alleged activity which caused nonperformance arises from the language of the letter of credit itself, rather than from the separate underlying transaction. Regardless of whether this document is a letter of credit rather than a guaranty, the issuer has available the defense of noncompliance with the terms of the letter of credit.
Whether failure to pay is “default” is a question which can be answered only by further reference to the underlying agreements, which are specifically listed in the letter of credit, and principles of law. The majority has ignored this issue and has concluded that nonpayment is necessarily default, which is contrary to Montana law.
The term “unremedied default” necessarily, implies unexcused nonperformance. Where the act of a creditor prevents the debtor from performing, performance is excused. Section 28-1-1301, MCA provides in part:
“ When delay or failure to perform or offer to perform excused. The want of performance of an obligation or of an offer of performance, in whole or in part, or any delay therein is excused by the following causes, to the extent to *419 which they operate:
“(1) when such performance or offer is prevented or delayed by the act of the creditor or by the operation of law, even though there may have been a stipulation that this shall not be an excuse . . .
This statute excuses Prospect’s nonperformance if Sherwood in fact caused the failure of Prospect to perform.
In Pioneer Engineering Works, Inc. v. McConnell (1949), 123 Mont. 171, 212 P.2d 641, the Court held that payment was excused under this statute where nonpayment was caused by actions of the other party to the contract. There, the failure of the seller of gravel-crushing equipment to provide conforming equipment prevented buyer from meeting obligations on a contract to provide gravel to the government for building Fort Peck Dam with a resulting inability to pay for the equipment. The Court held that seller could not recover where nonpayment was caused by seller’s breach. 123 Mont. at 192, 212 P.2d at 652. In Smith v. Gunniss (1943), 115 Mont. 362, 144 P.2d 186, the Court stated that “ ‘he who prevents a thing from being done shall never be permitted to avail himself of the non-performance which he himself has occasioned.’ ” 115 Mont. at 379, 144 P.2d 186, quoting 12 Am.Jur. Section 329. See also Gramm v. Insurance Unlimited (1963), 141 Mont. 456, 462, 378 P.2d 662, 665.
Where performance is excused there is no default. An unjustified refusal by Sherwood to disburse loan monies which caused nonperformance by Prospect would excuse nonperformance under Section 28-1-1301, MCA. This raises a factual question as to whether Sherwood caused Prospect’s nonperformance.
The majority suggests that Prospect’s promissory note creates an obligation independent of Sherwood’s performance in the underlying transaction. However, the promissory note expressly incorporates by reference the terms of Sherwood’s commitment letter. The promissory note states that it is given for an actual loan of $826,500 (which Sherwood *420 allegedly refused to fully disburse). It also states that it shall be construed with the other documents relating to the transaction and in accordance with Montana law. The promissory note therefore does not create an independent obligation of Prospect to pay.
It is true that the commercial usability of letters of credit should be protected. Careful inquiry is required to determine if the standard of “unremedied default” has been met. This requires a careful and factual determination. It is true that in the ordinary letter of credit situation, the court will not consider the completion of the underlying transaction. However, that rule is not applicable to the present situation where the parties have required that the bank make payment only where an “unremedied default” occurs. The meaning of “unremedied default” in this case is a question of fact to be resolved at trial, not on summary judgment.
I would reverse the conclusion of the District Court that nonperformance is necessarily “unremedied default”, and would remand the case for trial to determine what was intended by “unremedied default” and whether Sherwood’s nonperformance caused and therefore excused Prospect’s nonperformance.
MR. JUSTICES GULBRANDSON and SHEA concur.