No.  12103

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

JAMES H. CLAVER,

Plaintiff and Respondent,

vs.

BYRON N. ROSENQUIST and KATIE ROSENQUIST,

Defendants and Appellants.

---

Appeal from:   District Court of the Tenth Judicial District
               Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

For Appellant:

Robert L. Johnson argued, Lewistown, Montana.

For Respondent:

Peter L. Rapkoch, Lewistown, Montana.
B. Miles Larson argued, Stanford, Montana.

---

Submitted:   May 17, 1972

Decided:   JUL 2 1 1972

Filed:   JUL 2 1 1972

_Thomas J. Kearney_
                              Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

In a controversy involving the sale of gravel under a written contract, the district court of Fergus County, the Honorable LeRoy L. McKinnon, district judge, presiding without a jury, granted plaintiff a permanent injunction restraining the defendants from interfering in any way with plaintiff's access, control and disposition of reject gravel stored on defendants' land; from interfering with plaintiff's trade or business of selling this reject gravel during the term of the contract; and awarded plaintiff nominal damages of $100. Following denial of defendants' motion to amend the findings of fact, conclusions of law and judgment defendants now appeal from the final judgment.

The underlying facts of this matter may be summarized. In the fall of 1968, defendants Byron N. Rosenquist and his elderly mother Katie Rosenquist, jointly owned land near Stanford, Montana containing gravel deposits. In November, 1968 plaintiff James H. Claver entered into a contract with the Rosenquists as follows:

> "THIS AGREEMENT made this 19 day of November, 1968, between Byron N. Rosenquist and Katie Rosenquist of Stanford, Montana, herein called the sellers, and James H. Claver of Stanford, Montana, herein called the purchaser;
>
> "For the consideration hereinafter set forth, the sellers do hereby agree to sell to the purchaser all gravel and sand, required for any Great Northern Railway gravel bid, whether bid direct or indirectly by said purchaser, located in and on the following described land in the County of Judith Basin, State of Montana, described as follows:
>
>> "From the pit of the said sellers next to the seller's feed yard on the Southern edge of the Town of Stanford, in Section 16, Township 16, Range 12,
>
> "for the price of six cents (6¢) per cubic yard. The purchaser shall have full rights of ingress and egress in, on, over and across and through the above described land for the purpose of mining, storing and removing the sand and gravel purchased hereunder. The sellers agree that their livestock shall not run at large on said premises during the mining and storing operations.

"The purchaser shall have the right to construct any and all roadways as may be reasonably necessary or convenient to the mining, storing and removing of the sand and gravel purchased hereunder. Further, the purchaser shall have the right to stockpile on any ground adjacent to said pit, all of the reject sand and gravel, and shall have access to said stockpile for a period of five (5) years.

"Purchaser shall use all possible care and diligence and shall conduct his operations in such a manner as not to cause undo damage to the above described land.

"Upon the termination of operations under this agreement, the surface of the ground appurtenant to the gravel pit shall be smooth and restored by the purchaser to as near the present condition as possible and any stripping material shall be placed back into the pit.

"It is further agreed between the parties hereto that the purchaser shall have the exclusive right to the sand and gravel from said pit in future years at the price herein agreed upon for so long as the said purchaser shall comply with the terms of this Contract.

"This agreement shall be binding upon the heirs, executors, administrators, and assigns of the parties hereto.

                          "/s/ B. N. Rosenquist
                          "/s/ Katie Rosenquist
                          "/s/ James H. Claver"

Thereafter plaintiff contracted with Zook Brothers Construction Company, who had a contract to supply gravel to the Great Northern Railway, to use gravel from the Rosenquist land under the contract that plaintiff had with the Rosenquists. Plaintiff received a down payment of $2,500 from Zook under his contract with them and paid the Rosenquists $1,200 down on his contract with them, all in 1968. In March, 1969, the Zook Brothers Construction Company moved onto defendants' property and began excavating and processing gravel for the Great Northern Railway Company. By the end of May, 1969, Zook had completed his job of furnishing gravel to the Great Northern and had taken his crusher off of defendants' property; at this time all gravel had been delivered to the Great Northern. According to Zook's figures they had delivered 100,000 cubic yards of gravel to the Great Northern, but according to the Great Northern Zook had furnished them only 86,625 cubic yards; in any event whatever the volume was it was sufficient

to satisfy the Railroad's requirements. Zook Brothers remitted a total of $11,261.25 to plaintiff for 86,625 cubic yards of gravel for the Great Northern. This includes the $2,500 down payment in 1968, $5,950 paid in June 1969, and $2,811.25 with no payment date specified. As payments came in to plaintiff from Zook, plaintiff made corresponding payments at 6¢ per cubic yard to defendants Rosenquist. There was no rejection of payments by Rosenquists on gravel furnished the Great Northern.

However, a controversy arose over sale by plaintiff to the general public of reject gravel piled on Rosenquists' land. This reject gravel was a by-product of producing dimensional gravel to meet the Great Northern Railway's requirements. Plaintiff began making sales to the public of this reject gravel. About May 2, 1969, defendant Byron Rosenquist contacted plaintiff and demanded payment for all amounts outstanding, contending that nothing had been paid him by plaintiff since the preceding December while nearly 300,000 cubic yards of gravel had been taken from defendants' land. On May 5, 1969, plaintiff did go to see defendant but no offer of payment or settlement was made at that time. Plaintiff contended that the entire reject pile of gravel was his by virtue of the agreement heretofore set forth and that he had the right to sell the reject and remit 6¢ per cubic yard to defendants. Defendant Byron Rosenquist thereafter on occasion attempted to and did personally stop further removal of reject gravel from his property by plaintiff.

On May 8, 1969, plaintiff tendered to the defendants a check for $353.70 for reject gravel, which check was refused by defendants.

Subsequently plaintiff purchased various pieces of equipment such as a loader, a dump truck and a pickup in order to sell gravel to the general public. He also began negotiating with a ready-mix firm in Great Falls to bring water onto the defendants' land to set up a washing plant but the deal never materialized.

On June 4, 1969, defendant Rosenquist published a notice in the Judith

Basin Press disclaiming any agency relationship with plaintiff, and began calling some of plaintiff's customers telling them, in effect, that plaintiff had no right to sell the gravel. Defendant Rosenquist also attempted to dissuade them from paying plaintiff for gravel previously delivered.

On June 24, 1969, plaintiff instituted the instant suit containing three claims: (1) a claim for a permanent injunction against interference by Rosenquist, together with reasonable attorney's fees for securing the same; (2) a claim for damages in the amount of $1,760.11, resulting from alleged malicious and oppressive conduct by Rosenquist which induced third-party purchasers to refuse delivery and payment for gravel furnished by Claver to them; (3) a claim for punitive damages of $10,000 for alleged malicious and oppressive interference by defendant Byron Rosenquist with Claver's gravel business. On the basis of the verified complaint the district court issued a temporary restraining order prohibiting defendants from interfering with plaintiff's gravel business and from dealing with or disposing of the reject gravel.

Subsequently defendants' answer and counterclaim was filed, a hearing was held, and the district court granted an injunction pendente lite in favor of plaintiff and against defendants. Thereafter defendants filed their amended answer and counterclaim.

Defendants answer contained five defenses: (1) failure to state a claim; (2) a general denial of everything other than the written contract; (3) that plaintiff was not in any event entitled to attorney's fees; (4) failure of performance by plaintiff, consisting of nonpayment by him for gravel delivered to the Great Northern Railway and failure to level the pit after completion of the gravel operation; (5) that plaintiff was not entitled to exemplary damages in any event as his claims arose out of breach of a contract obligation.

In addition defendants filed three counterclaims: (1) failure of

- 5 -

the plaintiff to furnish an accounting of sales to the public after demand by defendants; (2) failure of the plaintiff to pay defendants the balance due for delivery of gravel to the Great Northern Railway Company in the amount of $2,100 with interest; (3) failure of plaintiff to restore the land to its original condition with accrued damages of $2,500.

The case came on for trial commencing July 30, 1970, and after all testimony and evidence was submitted the district court granted the parties additional time to file briefs and motions resulting in submission of the case for decision about February 1, 1971.

The district court entered its findings of fact, conclusions of law and judgment on March 9, 1971. In substance the court construed the contract as follows:

> "That the plaintiff should open and develop a gravel pit
> on defendants' land; that the overburden be stripped off
> and stored; that the plaintiff should dig, process, and
> supply the gravel needed by the Great Northern Railway
> Company, and store the reject produced on the defendants'
> land; that the plaintiff should restore the overburden to
> the pit area, and leave it as nearly as possible as smooth
> as it originally was; that during this time the defendants'
> livestock would not be permitted on the pit area; that
> thereafter for a period of five years the plaintiff was
> to have access to the reject pile for the purpose of sell-
> ing the said reject; that the defendants were to receive
> .06¢ per cubic yard of gravel sold for both specification
> and reject gravel".

The court also found that the plaintiff was entitled to at least nominal damages and entitled to an order restraining defendants from further interference with his rights under the contract. Judgment was entered accordingly. Following denial of defendants' motion to amend the findings, defendants appeal from the final judgment.

Defendants raise three issues for review upon appeal which can be summarized in this manner:

1. Is plaintiff entitled to injunctive relief against defendants?

2. Did the district court err in failing to grant defendants' judgment for money due them under the contract?

3. Did the district court err in denying defendants' motion for leave to amend their pleadings to conform to the evidence.

On the first issue, defendants contend that the plaintiff was not entitled to injunctive relief because plaintiff was in default on his payments under the contract and under such circumstances defendants were entitled to employ self-help to halt further removal of the gravel until a reckoning was made for the gravel already removed.

We find no error in the district court's finding with respect to the terms of the contract. Plaintiff was clearly entitled to sell the reject gravel to others at the contract price. Otherwise the provision in the contract that the purchaser shall have access to the stockpile of reject sand and gravel for a period of 5 years, and that he shall have the exclusive right to the sand and gravel from the pit in future years would be meaningless.

Section 13-707, R.C.M. 1947 provides:

"Effect to be given to every part of contract.
The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."

The only possible meaning of the quoted provisions of the contract is that plaintiff has the right to sell the reject gravel which was a by-product of the Great Northern Railway gravel bid.

A great deal of argument by counsel was directed at when payment was due under a contract which was silent as to time of payment. This is a spurious issue under the facts of this case. Insofar as the dimensional gravel sold to the Great Northern Railway Company is concerned, the record shows that at the time of trial payment by the plaintiff to the defendants for 86,625 cubic yards of gravel had been made; that defendant at no time objected to payment by plaintiff for this dimensional gravel as was actually made; that the defendants were satisfied with the payments made for the Great Northern gravel excepting for the 13,375 cubic yards about which a dispute existed between the Great Northern Railway and Zook Brothers. Here there is no substantial

- 7 -

evidence as to the amount actually delivered, nor any resolution of whether Zook's delivery figures of 100,000 cubic yards or the Great Northern's figures of 86,625 cubic yards were correct. Under such circumstances, there is a failure of proof that anything is owed by Claver to the Rosenquists for the sale of the dimensional gravel to the Great Northern Railway Company.

Insofar as gravel sales from the reject pile are concerned, the tender by plaintiff to defendants of a cashier's check for $353.70 representing payment for reject gravel sold was refused by defendants. Counsel for defendants on oral argument contended that the reason they didn't accept the tender of May 8 was for fear of estoppel against their contention that they didn't have to wait for payment until plaintiff sold the gravel from the reject pile. Whatever the reason may have been, the tender of payment was in fact rejected pending determination of this controversy, excusing plaintiff from further tenders on sales of reject gravel. Section 49-124, R.C.M. 1947 provides that the law does not require idle acts. As applied to tenders, see Sherlock v. Vinson, 90 Mont. 235, 1 P.2d 71.

For the foregoing reasons plaintiff was not in default of payments due the Rosenquists under his contract with them and accordingly is not precluded from securing injunctive relief here.

Directing our attention to the second issue for review, we hold that the district court should have entered findings of fact, conclusions of law, and judgment determining the issues raised by defendants' counterclaims. These counterclaims include: (1) a demand for an accounting; (2) a claimed balance of $2,100 and interest owing defendants for dimensional gravel delivered to the Great Northern Railway; and (3) damages of $2,500 for failure of Claver to restore the land of defendants to its original condition after the digging and crushing of the gravel. No findings, one way or the other, were entered by the district court on these counterclaims, and no mention was made of any of the counterclaims in the district court's judgment. We

- 8 -

hold that the district court should have made findings concerning these issues and entered judgment accordingly.

The third issue for review concerns whether the district court committed error in not allowing the defendants to amend their answer and counterclaim to conform to the evidence pursuant to Rule 15(b), M.R.Civ.P. Defendants' motion to amend requests permission to insert a counterclaim to the effect that in addition to the 100,000 cubic yards of dimensional gravel that was delivered to the Great Northern Railway Company from defendants' property, an additional 400,000 cubic yards of reject was severed from defendants' lands; that in the event the reject became the property of the plaintiff upon severance from the defendants' lands, defendants are entitled to the sum of 6¢ per cubic yard, or a total of $24,000 with interest.

Suffice it to say that there is simply no substantial, credible basis in the evidence to support such a claim. Accordingly the district court correctly denied defendants' motion to amend.

In summary then, we affirm the judgment of the district court heretofore entered, but remand this cause to the district court for entry of findings of fact, conclusions of law and judgment granting defendants an accounting and disposing of the balance of defendants' counterclaims.

_Frank I. Haswell_
Associate Justice

We concur:

_James T. Harrison_
Chief Justice

_John Conway Harrison_

_Gene B. Daly_

Associate Justices

- 9 -

Mr. Justice Wesley Castles dissenting:

I dissent. The district court and the majority of this Court have misconstrued the contract under the facts here. If as plaintiff, the purchaser, claims, he has a right to sell the reject gravel; then he must pay for it at the agreed rate, when it was produced—not when and if he ever sells it.

The proof is clear that the seller produced 100,000 yards of gravel for the Great Northern contract. This amount is his own figure. Whether a dispute between Zook Brothers and Great Northern exists as to its delivery should have no bearing here. Thus, no injunction should have issued as plaintiff was in default of payments due.

The majority opinion does, however, grant defendants an accounting with which I agree. The accounting should allow payment to the defendant of the amount due for delivery of gravel to Great Northern. It should also allow in its resolution of the counterclaim a finding that plaintiff did not restore the land to its original condition; and that thus there was a breach of the contract. This latter finding would make the injunction issued improper.

Under the circumstances here, Claver, the purchaser, had his own attorney draw the contract. Ambiguities should be interpreted against him. Additionally, it appeared at trial that the purchaser was clearly impeached in his testimony by prior inconsistent statements made on depositions, and his testimony should not have been accepted. It simply was not credible. The purchaser removed the gravel from its natural state, produced it, and is obligated to pay for it at the agreed price whether he sold it or stored it. I would reverse the judgment and direct further proceedings in accounting to determine the amounts owing by plaintiff and the damages, if any, for failure to live up to the terms of the contract.

_Wesley Castles_
Associate Justice

- 10 -