MARVIN W. GRAMM, Plaintiff and Respondent, *v.* INSUR-
ANCE UNLIMITED, a Montana Corporation, O. M. AS-
TRUP, ARLINE ASTRUP, his wife, and W. P. FULLER
and COMPANY, a California Corporation, Defendants
and Appellants.

No. 10438
Submitted January 15, 1963. Decided February 14, 1963.
378 P.2d 662.

Hoven & Astrup, Missoula, John M. Kline (argued orally) Glasgow, for appellants.

Garnaas, Murray & Hall, Missoula, Harold L. Garnaas (argued orally), Missoula, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by the defendant from an order entered by the district court of Missoula County, which provided that certain real property be sold to foreclose a mechanic's lien.

Defendants, Arline Astrup and O. M. Astrup, filed a disclaimer of interest in the property, and upon proper motion, the case was dismissed as to them.

Defendant W. P. Fuller & Company filed a stipulation signed by all parties which showed that W. P. Fuller & Company had expended the sum of $4,469.72 in supplies and labor, on subcontract and this amount was included in the mechanic's lien filed by the plaintiff. Judgment in that amount was given for defendant, W. P. Fuller, against plaintiff, Marvin Gramm, and plaintiff Gramm thereby became subrogated to

that extent in this suit against defendant, Insurance Unlimited, hereinafter known as defendant.

During the progress of the trial, the defendant and cross-complainant dropped their cross-complaint and all affirmative defenses, and then filed a new answer which was in effect a general denial.

Defendant acted in all transactions through its agent, Vernon Hoven, president of the corporation. Insurance Unlimited contracted with plaintiff Gramm, hereinafter known as plaintiff, for the construction of a house for the benefit of Vernon Hoven.

The clauses contained in the contract which are important in this appeal are as follows:

"All work shall be done in a good workmanlike manner according to the best building practices, and all materials furnished by the Contractor hereunder shall be of good quality. * * *

"It is understood and agreed that the Owner will pay to the Contractor, and the Contractor will accept from the Owner, in full payment, the following:

"(a)   The cost of all work subcontracted plus ten percent (10%) thereof when and as each subcontract is completed.

"(b)   The cost to the Contractor of all materials purchased and used in the construction, plus ten percent (10%) of such cost.

"(c)   The cost of all labor employed by the Contractor in the work, including wages paid to laborers, payments made by the Contractor for unemployment and social security on such laborers, and the cost of Workmen's Compensation covering such employees, plus ten percent (10%) of the total of such labor cost. * * *   .

"Items (b), (c), (d), and (e) above shall be paid by the Owner to the Contractor on a monthly basis, that is to say, that at the end of each month the Contractor shall furnish to the Owner a statement covering said items during that

month, and the *same shall be paid by the Owner to the Contractor on or before the 5th day of the following month;* a final payment shall be made by the Owner to the Contractor upon the completion of the building regardless of the date within a particular month the same is completed. * * *

"The Owner shall have the right to order changes in the plans and specifications and to require additional or other work to be done, other than described herein, *but any changes or additional work so required shall be done upon written order from the Owner* and the Owner will be required to pay for any additional work on the basis provided for above.

"The Contractor will promptly pay and discharge all bills for materials, and will promptly pay all persons employed by him in the work, and will when required furnish evidence of payment to the Owner. In this connection, it is recognized *that the Contractor's ability to pay for materials and labor is dependent upon prompt payment by the Owner.* * * *

"Time is of the essence of this agreement * * *." Emphasis supplied.

Plaintiff testified that his resources were not sufficient to pay for materials and supplies unless the defendant was current in his monthly payment, and that this was understood by both parties.

In the Spring of 1960, while work was in progress, the defendant had considerable difficulty in obtaining financing for the home. On April 11, 1960, the defendant wrote the plaintiff and enclosed a check in payment of the March bill, and advised the plaintiff to discontinue work as no further funds were available. It subsequently turned out that the check enclosed was more than sufficient to pay the March bill, so that the plaintiff was advised to continue.

The bill for the April work was submitted in due course, and payment was made with the exception of about $200 over which the parties could not reach an agreement.

All during this period the inability of the defendant to se-

cure financing underlaid the transactions between the parties.

The bill for the May work was delivered in person by plaintiff on June 7th, with a request for prompt payment. It appeared that certain items ordered had arrived and the plaintiff was unable to carry the items himself. The defendant promised payment within two days.

When the plaintiff had not received the payment for the May work on June 9, 1960, he pulled his men off the job. Shortly thereafter he received a letter over the typewritten signature of Vernon Hoven to the effect that the defendant would be in Los Angeles for the next two weeks, and an address was given in the event that the plaintiff should need to contact him. No payment was enclosed, nor was any promise made concerning payment.

After defendant returned from California, he called the plaintiff to complain about a railing which had been constructed according to plan specifications and not in accord with his oral request for wrought iron. At that time, the plaintiff advised the defendant that he had better get another contractor. Thereafter the defendant wrote a letter dated July 14, 1960, in which he advised that he was sorry that the plaintiff had left the job, and that the work had been "eminently satisfactory."

The roofing subcontractor testified that he had completed as much of the work as was feasible without the rest of the building being completed.

For defense the defendant argues that the plaintiff made changes upon his oral instructions rather than upon written instructions as the contract provided: That the removal or abandonment of the job by the plaintiff had been a breach of the contract and that as a consequence the defendant would not need to pay the plaintiff for the materials and labor expended thereon. That the roofer did not complete the sub-

contract as was required as a pre-requisite for payment. That the work had not been done in a workmanlike manner.

We find no merit in the defendant's argument that the plaintiff did not perform in conformity with the written contract when he made alterations on the oral orders of Vernon Hoven. The contract clearly provided that all changes in specifications from the plans were to be in writing, but the defendant was free to waive that requirement. It is clear from his actions that he did waive that requirement by orally issuing alteration orders.

Defendant also argues that he need not pay for the materials and labor because the plaintiff ceased work and thus breached the contract.

The rule is stated in Corbin on Contracts, § 946, as follows: "The non-payment of an installment of money when due will always create a right of action for that money, but it will not alway be a total breach."

Thus, it depends upon the particular facts of each case whether or not non-payment of an installment is a total breach enabling the contractor to cease work, or whether it is merely a partial breach entitling the contractor to sue for the partial breach, but not permitting him to abandon the contract.

In the instant case, the contract clearly provided that the ability of the contractor to continue work on the house was dependent upon prompt payment by the Owner. Moreover, the contract provided that time was of the essence.

On June 7, 1960, the contractor was promised payment within one or two days. Not only was payment not made within that period, but payment was not made in the following two weeks, during the time that the defendant was in California and was thus unaware that the plaintiff was forced to cease work. What transpired after June 9, the date the plaintiff ceased work could not affect his right to cease on June 9, but it clearly shows the inability of the defendant to pay promptly or otherwise.

462

Moreover, this court in Smith v. Gunniss, 115 Mont. 362, 376, 144 P.2d 186, 189, speaking through Mr. Justice Adair said: *"Now, it is not the contract for erecting or repairing the building which creates the lien, but it is the use of the materials furnished and the work and labor expended by the contractor, whereby the building becomes a part of the freehold, that gives the materialman and laborer his lien under the statute. (Van Stone v. Stillwell & Bierce Mfg. Co., 142 U.S. 128, 12 Sup.Ct. 181, 183, 35 L.Ed. 961, 964.)"*

Clearly, under the rule stated above, the plaintiff had a right to file a lien under section 45-501, R.C.M.1947, and to bring an action to foreclose that lien.

With reference to the defendant's argument that the subcontractor did not finish the roofing job, and that the contract provided that payment was conditional upon completion, this court is not impressed. The roofing subcontractor was prevented from completing his work by the breach of the defendant.

The general rule is stated thus: "A party to a contract cannot take advantage of his own act or omission to escape liability thereon." 17 C.J.S. Contracts, § 468. Thus the defendant here cannot urge as a reason for non-payment the incomplete performance by the roofing subcontractor.

With regard to the defendant's argument that the plaintiff had not used the best building procedures, we must refer to the fact that the district court examined the premises and did not find this to be so. A building examiner found that the building was not entirely constructed in the best building procedures, but he failed to deny a permit as he must by ordinance if the building were in fact defective. We find substantial evidence to support the district court and thus may not overturn its findings of fact. See Duval v. Fuchs, 141 Mont. 123, 375 P.2d 541.

On oral argument, the respondent orally moved this court to assess attorney's fees in accordance with Rule XIX, Rules of the Supreme Court, dealing with assessment of dam-

age for a frivolous appeal. While this court is concerned with the nature of the appeal in the present case, the respondent has failed to comply with Rule XI which requires that all motions be submitted in writing and service made upon the opposing party. For this reason the motion is denied.

For the foregoing reasons, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, ADAIR, and DOYLE, concur.