C. L. FAUSETT AND ALBERT McCORKLE, PLAINTIFF AND
R. S. STRONACH, JR., PLAINTIFF AND RESPONDENT, v. ED-
WARD BLANCHARD, ALBERT CLUTTER, SILVER
KEYSTER MINES, INC., A CORPORATION, DEFENDANTS AND
APPELLANTS.

No. 11401.
Decided December 17, 1969.
Rehearing Denied January 12, 1970.
463 P.2d 319.

Edwin E. Multz, argued, Missoula, for appellant.

Walter T. Murphy, County Atty., argued, Superior, James P. Keane, Kellogg, Idaho, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

Appeal from a judgment foreclosing certain liens on mining claims of Prosperity Mines Company, appellant herein.

Prosperity Mines Company, a corporation (hereinafter referred to as Prosperity), owns seven unpatented mining claims in the Keystone District, Mineral County, Montana. Five of these claims are located in the adjoining corners of sections 27, 28, 33 and 34, in Township 18 North, Range 26 West MPM.

The "Around the Corner" claim is located in this group of five claims. The two claims referred to as being 500 yards away from the other five, are apparently located in section 35 of the same township.

Prosperity leased these claims to a third person not a party to this action. The lease contained a limited liability clause in the following form:

"1. LIABILITY AND NON-RESPONSIBILITY. Lessee shall pay, as due, all valid claims for the work done, services rendered, or material furnished to the leased premises and shall hold Lessor harmless from any liability arising out of any operations under the lease. Lessee shall defend all suits or claims arising out of such operations at his own expense. Lessee agrees to post notice of non-responsibility signs upon the property for the protection of the Lessor".

Through a series of assignments one Edward Blanchard obtained this lease on the seven claims. The assignment to him was duly recorded October 3, 1963. Blanchard then negotiated through Fred W. Wilson, president of Prosperity, and obtained an amendment to the lease changing paragraph 24 thereof to read as follows:

"The Lessee (Blanchard) hereby agrees to perform mining exploration and development work on the claims described in said original lease, consisting of shaft sinking, cross cutting, drifting, tunneling, mining of ore, diamond drilling, and perform such other work that will specifically develop and explore the said mining claims with the exception of geophysical and geochemical surveys. In this connection the Lessee (Blanchard) agrees to expend the sum of $1800.00 in said work by September 1, 1964, and the sum of $1500.00 per month for the months of September, October, November and December, 1964, and the sum of $2500.00 per month thereafter, unless prevented from doing so by some Act of God or circumstances beyond his control."

Blanchard subsequently assigned this amended lease to Silver Keyster Mines, Inc., a corporation, of which he is president. Albert Clutter is the chairman of the board of directors of Silver Keyster Mines. Silver Keysters Mines, Inc., Clutter, and Blanchard were all defendants in the original actions and default judgments were rendered against each of them. They have not appealed from those judgments.

Blanchard contracted with C. L. Fausett and Albert McCorkle, hereinafter referred to as contractors, for the construction of a shaft and some exploratory drifts on the "Around the Corner" claim. The amounts of money agreed upon in the lease amendment for sinking the shaft and for driving drifts were escrowed in the Idaho First National Bank of Wallace, Idaho.

Blanchard hired R. S. Stronach, Jr., a mining engineer, to render professional services in engineering the project, to supervise the workings under ground, to sample ore, and to prepare certain reports. Stronach also prepared an application for a loan from the Office of Mineral Exploration, a federal government lending agency.

Stronach was paid certain fees by Blanchard, and the contractors were paid all of the escrowed money for sinking the shaft, however, such escrowed money was insufficient to cover all the work done through December 1964. Stronach and the contractors filed mechanic's liens against the property to protect their interest in services rendered after the employers failed to keep up on wage and contract payments. Lien foreclosure actions were filed by Stronach and the contractors against Blanchard, Clutter, and the two mining companies, Prosperity and Silver Keyster. These actions were consolidated for trial. Judgment was rendered for the plaintiff R. S. Stronach in the amount of $4,050.44, plus interest, $1,000 for attorney fees, and costs; for the plaintiff contractors in the amount of $9,027.78, plus interest, $900 attorney fees, and costs. The foreclosure judgments were applied against all

seven claims in the Prosperity mining property. Prosperity was the only defendant who appeared for trial and is the sole appellant here.

In reviewing equity cases, although all evidence is examined, the trial court will not be reversed if there is substantial evidence which would justify an inference supporting the judgments. Bender v. Bender, 144 Mont. 470, 397 P.2d 957; Havre Irrig. Co. v. Majerus, 132 Mont. 410, 318 P.2d 1076.

Although here the evidence is conflicting in part, the trial court found as fact:

"That Prosperity Mines Company required the Lessee to perform the work done by the plaintiff and consented to the performance of such work and knew at all times that such work was being done upon the Prosperity Mines property and officials of Prosperity Mines Company inspected and viewed the work as it progressed at least once each week."

This finding ties the work done squarely into the amended contract provision previously quoted as paragraph 24. We have carefully reviewed the evidence and find sufficient credible evidence to support the trial court.

Also, the trial court found, and it is supported by substantial credible testimony, that the mining claims comprised one contiguous group, were operated as a unit, and known as the Prosperity Mines Company property.

Thus here we have, in effect, one issue for review having accepted the findings of the trial court as being substantiated. This issue is whether a lien, based on services rendered to a lessee under the above finding, will attach to the lessor's interest in mining claims.

This issue has been answered squarely in Montana. Section 45-501, R.C.M.1947, provides:

"Every mechanic, miner, machinist, architect, foreman, engineer, builder, lumberman, artisan, workman, laborer, and any other person, performing any work and labor upon, or furnishing any material, machinery or fixture for, any building, struc-

ture, bridge, flume, canal, ditch, aqueduct, mining claim, coal mine, quartz lode, tunnel, city or town lot, farm, ranch, fence, railroad, telegraph, telephone, electric light, gas, or waterworks or plant, or any improvements, upon complying with the provisions of this chapter, for his work or labor done, or material, machinery or fixtures furnished, has a lien upon the property upon which the work or labor is done or material is furnished."

Section 45-504, R.C.M.1947, provides in pertinent part:

"The lien given extends to the lot or land upon which any such building improvement, or structure is situated, to the extent of one acre * * * upon which the same is situated, if the land belonged to the person who caused said building to be constructed, altered, or repaired; but if such person owned less than a fee-simple estate in such land, then only his interest therein is subject to such lien * * *".

Respondents contend we should adopt a construction of the above statutes which would subject a lessor's interest in land to a mechanic's lien if his lease required the lessee to do the work for which the lien is filed. Montana law clearly permits a lien to be filed against the property interest of an owner who contracts to have work done on the property. Morin Lumber Co. v. Person, 110 Mont. 114, 99 P.2d 206; Smith v. Gunniss, 115 Mont. 362, 144 P.2d 186.

Respondents contend and the trial court found that Prosperity, as the lessor who required lessee to perform certain exploration acts to the extent of $2,500 during September 1964, and $1,500 each month thereafter for the remainder of 1964, is, in the contemplation of section 45-504, "the person who caused said building to be constructed, altered, or repaired" and therefore the lien should attach to its interest in the claim. Respondents argue that the lessor's interest in the property may be subjected to a lien where the contract or lease required the performance of the work for which the lien is claimed.

In support of this argument respondents cite Morin Lumber Co. v. Person, supra, as holding that there need not be a direct contract between the lessor and the lienor but only that the owner must consent in advance to the improvement either expressly or impliedly, or subsequently ratify what has been done. This is a worthy argument based on a humane policy of protecting the laborer and materialman and there is ample authority to support it. This Court, in upholding a lien against improvements, in Caird Engineering Works v. Seven-Up Gold Mining Co., 111 Mont. 471, 479, 111 P.2d 267, 272, held:

"This court is committed to the view that our lien statutes should receive a liberal construction to the end that the objects and purposes of the statutes may be carried out. * * * The statute giving the right to a lien is paramount to the conditions of the leases."

Here the amendment to the lease (made by Blanchard and Prosperity) was entered into before respondents Stronach, Faussett or McCorkle commenced their work. It was a contract between Prosperity Mines Company and Blanchard, the lessee, whereby Blanchard agreed to perform certain work, including the work done by the respondents. Appellant not only contracted to have this work done, but knew it was done and some of its officials took the occasion to inspect it.

Appellant bottoms its entire case on an early Montana case with a very similar fact situation holding that a lessee was not a contractor of the lessor by the provisions of the lease and that a lien did not attach to the lessor's interest. Block v. Murray, 12 Mont. 545, 31 P. 550 (1892). However, this case does not apply since, as the trial court found, appellant required the very work done that was done.

Appellant contends that the liens, if they are allowed, should go only to the "Around the Corner" claim upon which the tunnel was commenced. We find no merit to this contention. Where a number of mining claims are grouped

together and commonly considered to be and are opeerated as a group, work on one claim will support a lien on all claims in the group. The limit of one acre to a mechanic's lien, as set forth in section 45-504, R.C.M.1947, does not apply to a mining claim. See Smith v. Sherman Min. Co., 12 Mont. 524, 31 P. 72; McIntyre v. MacGinniss, 41 Mont. 87, 108 P. 353; Caird Engineering Works v. Seven-Up Gold Mining Co., 111 Mont. 471, 111 P.2d 267; American Law of Mining, Vol. 5, § 29.15, p. 264. In U.S. Gypsum Co. v. Schreiner, 135 Mont. 312, 316, 340 P.2d 548, 551, this Court held:

"A 'mining claim' is not restricted to a single mining location but may include as many adjoining locations as a miner can purchase and the ground covered by all will constitute a mining claim."

Nor do we find merit in appellant's contention that the lien holders waived their lien rights due to the provision in the lease absolving the appellant property owner from all liens. Labor and materialman's lien laws should be interpreted liberally to protect the right of the lien.

We also find no merit in the appellant's contention that the liens are void because the work done did not enhance the value of the property. Work was done, money was spent, samples of ore were analyzed, and the property was thereby evaluated; even if the results were negative, the appellant received information for any future operations of the properties.

However, as was noted in the Caird Engineering Works case, supra, the enhancement of the value of the property is not essential to the validity of a lien on a mining claim.

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, HASWELL and the HONORABLE L. C. GULBRANDSON, District Judge, sitting for MR. JUSTICE BONNER, concur.