No. 13889

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

B. J. BAUER, JR.,
d/b/a BAUER CONSTRUCTION COMPANY,

        Plaintiff and Respondent,

    -vs-

JAMES DAVID COOK and DIETA MARIA COOK,
husband and wife,

        Defendants and Appellants.

---

Appeal from: District Court of the Fourth Judicial District,
        Honorable Jack L. Green, Judge presiding.

Counsel of Record:

    For Appellants:

        Tipp and Hoven, Missoula, Montana
        Thomas W. Frizzell argued, and Raymond P. Tipp
         argued, Missoula, Montana

    For Respondent:

        Skelton and Knight, Missoula, Montana
        Robert Skelton argued, Missoula, Montana

---

        Submitted: February 2, 1979
          Decided: JUN 13 1979

Filed: JUN 13 1979

*Thomas J. Kearney*
                  Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court, Missoula County, foreclosing a mechanic's lien on a dwelling house and directing defendants to pay the lien-holder's costs and attorney fees.

In January 1975, James and Dieta Maria Cook contacted Blaisus J. Bauer, Jr., a building contractor, for the purpose of discussing the construction of a dwelling house on property located in Missoula County, Montana. Bauer, who had been in the construction business since 1971 and had built approximately thirty houses in that time, agreed to build the home. On February 19, 1975, the parties entered into a contract whereby Bauer agreed that the proposed house would be "turn-key" complete within ninety days after commencement of work. The Cooks agreed to pay Bauer in the following manner:

"A. 20% of cost upon completion of floor.

"B. 20% of cost upon completion of framing, roofing and exterior windows & doors.

"C. 20% of cost upon completion of rough wiring, plumbing & heating.

"D. 20% of cost upon completion of sheet rock and texturing.

"E. 20% of cost upon completion . . ."

The contract plans and specifications were presented to the Western Federal Savings and Loan Association of Missoula, Montana, for approval of a loan to finance the construction. The loan was approved and an account opened whereby the funds were to be disbursed in accordance with the contract and Western Federal's disbursement instructions, which required that all disbursement requests be approved and signed by the Cooks and a loan officer.

-2-

Bauer began construction immediately. Upon completion of the floor, a building inspector for Western Federal inspected the work and approved a disbursement of $8,301.33 to Bauer. The Cooks also approved the disbursement. Upon completion of the framing, roofing, and exterior windows and doors, a similar procedure took place. Then, on April 1, 1975, after the building inspector had inspected the rough wiring, plumbing, and heating, and approved the disbursement, Dieta Cook refused to sign the disbursement request. Mrs. Cook refused to give her signature because she felt Bauer had not performed his part of the contract. A handwritten "Statement of Understanding" was given to Bauer by the Cooks, demanding that thirty-one items be completed before the disbursement request would be signed. Bauer explained to the Cooks that he could not continue construction without the funds, but Mrs. Cook refused to change her position.

On April 4, 1975, Bauer ceased work and did not return to the construction site. Thereafter, four days later, he filed and perfected a mechanic's lien in the office of the Clerk and Recorder, Missoula County, under the provisions of section 45-501, et seq., R.C.M. 1947, now section 71-3-501, et seq. MCA. Bauer claimed the Cooks owed him $8,300 for labor and materials. This amount was reduced to $3,000 after the Cooks paid $5,300 to various materialmen.

A suit to foreclose on the lien was filed April 22, 1975. Trial was commenced without a jury, in District Court, Missoula County on April 19, 1976. Three days later, due to calendar restrictions, the District Court ordered that the trial would be continued indefinitely. On December 9, 1976, the parties agreed to submit the case to the court without further testimony. The District Court entered

-3-

findings of fact, conclusions of law and judgment of foreclosure on March 24, 1977. Bauer was awarded $3,000 as foreclosure of the mechanic's lien and $1,000 as reasonable attorney fees.

On appeal, the Cooks have raised two issues:

1. Did Bauer abandon the project for which he had contracted, thereby rendering his filing of the mechanic's lien improper?

2. Did the District Court err in failing to reduce Bauer's recovery under the lien due to his defective performance of the contract?

The general rule in Montana is that a mechanic's lien arises only upon completion (or substantial completion) of the contracted work. Western Plumbing of Bozeman v. Garrison (1976), 171 Mont. 85, 556 P.2d 520. However, the general rule does not apply if the laborer or material-man has been prevented from completing the work by the breach of the owner or a third party. Intermountain Electric, Inc. v. Berndt (1974), 164 Mont. 67, 518 P.2d 1168.

In the case on appeal the alleged breach occurred when the Cooks refused to sign the disbursement request which had been presented to them by Bauer. The Cooks contend (1) under the circumstances, their refusal to sign did not constitute a breach of contract, and (2) if they did breach the contract, Bauer was nonetheless unjustified in abandoning the contract.

In Gramm v. Insurance Unlimited (1963), 141 Mont. 456, 378 P.2d 662, we said:

> "The rule is stated in Corbin on Contracts, § 946, as follows:
>
> "'The non-payment of an installment of money when due will always create a right of action for that money, but it will not always be a total breach.'

-4-

"Thus, it depends upon the particular facts of each case whether or not non-payment of an installment is a total breach enabling the contractor to cease work, or whether it is merely a partial breach entitling the contractor to sue for the partial breach, but not permitting him to abandon the contract."

The District Court concluded that Bauer completed the rough wiring, plumbing and heating on or about April 1, 1975, and that the building inspector examined the work and approved the disbursement of $8,300 to Bauer, but Dieta Cook refused to sign the disbursement request.

In reviewing findings of fact in a civil action tried by the District Court without a jury, this Court is confined to determining whether there is substantial credible evidence to support those findings. Hornung v. Estate of Lagerquist (1970), 155 Mont. 412, 473 P.2d 541. Although conflicts may exist in the evidence presented, it is the duty and function of the trial judge to resolve such conflicts. His findings will not be disturbed on appeal where they are based on substantial though conflicting evidence. Fausett v. Blanchard (1969), 154 Mont. 301, 463 P.2d 319. Finally, in determining whether the trial court's findings are supported by substantial evidence this Court must view the evidence in the light most favorable to the prevailing party. Hellickson v. Barrett Mobile Home Transport, Inc. (1973), 161 Mont. 455, 507 P.2d 523.

The record here contains the testimony of the sub-contractors who installed the rough wiring, plumbing, and heating prior to the inspection and approval of the work by the employee of the lending institution. We find that the District Court's findings are based on substantial evidence. Since the installment payment was due, the Cook's refusal to sign the disbursement request constituted a breach of contract. The remaining question then is,

-5-

did the refusal to sign under these facts constitute a total breach of the parties' agreement, thereby justifying Bauer's abandonment of the contract?

In _Gramm_, this Court upheld the District Court's foreclosure of the mechanic's lien because the underlying contract provided that the ability of the contractor to continue work was dependent upon prompt payment by the owner. In addition, the contract stated that time was of the essence. However, in _Berndt_, involving substantially the same question, we found nothing in the record to suggest that the contractor's failure to make a payment actually prevented the subcontractor-lienholder from completing the work. There was no evidence to indicate that the subcontractor was entitled to demand any money from the contractor at the time it submitted a bill, nor was there any proof that prompt payment by the contractor and time were of the essence to completion of the work. Finally, because the subcontractor did not go to the homeowners and ask them for payment of the bill or ask them if they wanted the work completed, we concluded the subcontractor had willfully and voluntarily abandoned the contract before there had been substantial performance of its terms.

In Bauer's case, the agreement required the house to be "turn-key" complete within ninety days of commencement of work. Proof that time was of the essence is found in Bauer's testimony:

> "Mrs. Cook and Jim Cook and myself discussed
> the fact that I wanted 120 days to build the
> house because I felt it was the kind of house
> that needed 120 days, but they were living
> in a motel and speed was of very major importance
> and so I, against my wishes, agreed to put it
> on 90 days . . ."

Despite their desire to take possession of the house within ninety days of commencement of construction, the

Cooks requested numerous changes in the plans and specifications of the house. Those changes included repositioning the house on the foundation, relocating certain bay windows, putting additional beams in the living room, enlarging the overhang on the back of the roof, extending a gable five feet and repositioning the kitchen cabinets. Also, the back wall had to be torn out for a new kitchen window, and the framing of the interior of the house was delayed considerably due to the Cooks' indecision concerning the size and type of fireplace that would be installed.

Upon discovering that the Cooks did not intend to sign the disbursement request until he complied with the thirty-one demands contained in the "Statement of Understanding", Bauer approached the Cooks on several occasions, explained that he could not continue his work without the funds, and requested that they sign the disbursement request. When it became clear that the Cooks were not going to sign the document, Bauer abandoned the construction site and filed a mechanic's lien to protect his interests in the work done and materials furnished.

Having determined that substantial evidence exists in the record upon which the District Court could reasonably conclude that the Cooks breached the contract, we now hold that due to the aforementioned circumstances the refusal to sign the disbursement request constituted a total breach of the contract which prevented Bauer from continuing construction and justified abandoning the jobsite. The mechanic's lien was properly filed and foreclosed.

The District Court's findings of fact, conclusions of law, and judgment make no mention of the Cooks' counter-claim for defective performance. This Court adhers to the doctrine of implied findings which states that where a

court's findings are general in terms, any findings not specifically made, but necessary to the judgment, will be implied. Ballenger v. Tillman (1958), 133 Mont. 369, 324 P.2d 1045. However, where as here, the trial court has not entered judgment on a claim, nor made a general finding on such claim from which reasonable implications can be made, we cannot say that the claim is with or without merit. Similar circumstances arose in Claver v. Rosenquist (1972), 160 Mont. 4, 499 P.2d 1235, in which the Court said:

> ". . . we hold that the district court should
> have entered findings of fact, conclusions
> of law and judgment determining the issues
> raised by defendant's counterclaims . . .
> No findings, one way or the other, were
> entered by the district court on these counter-
> claims, and no mention was made of any of the
> counterclaims in the district court's judgment.
> We hold that the district court should have
> made findings concerning these issues and
> entered judgment accordingly."

We cannot imply from the District Court's judgment of foreclosure that the Cook's counterclaim for defective performance was necessarily without merit.

In conclusion, the judgment of foreclosure is affirmed, but the cause is remanded to the District Court for entry of findings of fact, conclusions of law and a judgment disposing of the issues raised in the counterclaim.

_____
Justice

We Concur:

_____
                Chief Justice

_____

_____

_____
                Justices