No. 87-512

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

DEAN DURAND, d/b/a DURAND CONSTRUCTION
CO., FRANK K. MUTCH and MARY E. MUTCH,
d/b/a FLATHEAD ELECTRIC SERVICE, AND
DUANE H. LIEN, d/b/a MAIN HARBOR PLUMBING,
HEATING & PUMPS,

        Plaintiffs and Appellants,

-vs-

JOHN DOWDALL and J.D. DUPUIS,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Ingraham Law Office; Greg L. Ingraham argued, Ronan,
Montana

    For Respondent:

        Boone, Karlberg & Haddon; Sam E. Haddon argued,
Missoula, Montana

---

Submitted:  April 26, 1988

Decided:  June 16, 1988

Filed:    JUN 1 6 1988

*Ethel M. Harrison*

---

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiffs Durand, Mutch, and Lien appeal a judgment entered in favor of defendants by the Twentieth Judicial District Court, Lake County, sitting without a jury. We affirm. The issues are:

1. Did the District Court err in concluding that plaintiffs had no valid mechanic's liens upon the defendants' property?

2. Does merger of the leasehold and the fee permit enforcement, against the fee, of a lien upon the leasehold?

3. Should plaintiffs be allowed to recover under the theory of quantum meruit?

4. Was the claim of appellant Mutch, d/b/a Flathead Electric, barred due to untimely filing of the lien?

Defendants John Dowdall and Joyce Dupuis, co-owners of a parcel of property in Polson, Montana, entered into a "Premises Lease and Option to Purchase Real Estate" with Edward Mills in July 1984. Prior to the time Mr. Dowdall and Ms. Dupuis (Lessors) had purchased the property it had been used to operate a service station. Pertinent provisions of the agreement with Mr. Mills (Lessee) appear below:

> 5. USE OF PREMISES. The real property herein described shall be leased for the purpose of operating a fast food business known as BURGER INNS of AMERICA, Montana Division, and for no other purpose.

> 6. IMPROVEMENTS AND FIXTURES. It is understood that LESSEE intends to make substantial improvements upon said real property in order to make it suitable for the operation of his business. It is further understood that at the expiration of the lease, LESSORS shall be vested with all right, title and interest to any and all improvements and fixtures attached to the real property, in the event LESSEE fails to exercise his option to

2

purchase.  At the expiration of the term of the lease, LESSEE shall have no further interest in the real property or in any improvements or fixtures located thereon.

7.  MECHANIC'S LIENS.  In any and all contracts, written and oral, executed by LESSEE for any materials, or for any construction on or repair of any existing or future improvements located on the real property, LESSEE shall include language to the effect that he is solely responsible for the cost of all labor and materials purchased by or for him, and that the contractor, subcontractor, materialman, or supplier waives any right to file a mechanic's lien on the said real property and any and all causes of action he may have against LESSORS as owners of the real property.

In August 1984 Lessee contracted with plaintiff Durand for "extensive" demolition and remodeling of the service station into a restaurant.  Mr. Durand provided labor and materials for the project for about two and one-half months, but when it became clear that Lessee was not going to pay him, Mr. Durand pulled off of the job.  In December, Mr. Durand filed a mechanic's lien against the property for $23,030.87, the total value of labor and materials furnished by Durand Construction Company.

Plaintiff Duane Lien has a plumbing and heating business in the Polson area.  Lessee contracted with Mr. Lien for renovation and remodeling of the plumbing on the subject property.  Mr. Lien began in August and pulled off of the job in October just as Mr. Durand had.  In December Mr. Lien filed a mechanic's lien against the property for $3,032.84, the total value of labor and materials furnished by him.

Plaintiff Frank Mutch contracted with Lessee to provide electrical work for the project, in August 1984.  He alleges he worked on the project up through January 16, 1985.  He filed a mechanic's lien against the property on March 5,

3

1985, for $8,941.16, the total value of labor and materials furnished by him.

Plaintiffs then brought this action to recover on their liens. The District Court concluded that the liens were invalid and did not constitute liens or encumbrances against Lessors' property. The court ruled that the mechanic's liens filed by plaintiffs attached only to Lessee's interest in the property which had been cancelled and terminated. The court also made the following determinations:

> [That] Plaintiffs have . . . failed to show any consent by Defendants to the contracts between Mills and Plaintiffs and failed to prove any ratification thereof by Defendants.
>
> That none of the contracts by Plaintiffs were completed. Each Plaintiff pulled off the job before work was completed because Mills did not pay for work performed to that point. None of the Plaintiffs ever billed either of the Defendants for work done or materials provided, and all of the Plaintiffs billed only Mills for their claims.
>
> That the property in its present condition, which is the same condition as existed when Plaintiffs discontinued work, is unusuable for any commercial purpose. Electrical work is incomplete. Interior finishing is incomplete. Fixtures and equipment necessary to make the premises usable as a restaurant or for any other commercial purpose are not present and available.
>
> That at the time the property was leased to Mills it had a fair market value of $128,000.00. In its present condition the property is not usable for any commercial purpose and an expenditure of approximately an additional $12,000.00 to $30,000.00 would be required to make the property usable for a commercial purpose. The property is also not now suitable for any non-commercial use.
>
> That the work undertaken by Plaintiffs to date has not enhanced the value of the property.

I

Did the District Court err in concluding that plaintiffs had no valid mechanic's liens upon the defendants' property?

4

The plaintiffs question the District Court's judgment in several respects as it relates to this issue. Much of their argument centers upon their theory that a contract for improvements arose by implication between Lessors and themselves. The trial court rejected that theory. We need not address this argument as we determine the issue by answering the following inquiry:

Did the court err in concluding that none of the plaintiffs substantially completed the work, and, by implication, that they therefore had no right to assert liens upon the property?

The plaintiffs accept the general rule in Montana stated in Bauer v. Cook (1979), 182 Mont. 221, 224-25, 596 P.2d 200, 202, that a mechanic's lien arises only upon completion or substantial completion of the contracted work. They rely upon an exception recognized in Bauer, 596 P.2d at 203, which arises when the laborer or materialman has been prevented from completing the work by the breach of the owner or third party. Plaintiffs argue that Lessee's failure to pay when payment was requested constituted a breach by a third party which prevented completion of the work. We conclude that Intermountain Electric, Inc. v. Berndt (1974), 164 Mont. 67, 518 P.2d 1168, is controlling. That case was explained in Bauer, 596 P.2d at 203:

> However, in Berndt, involving substantially the same question, we found nothing in the record to suggest that the contractor's failure to make a payment actually prevented the subcontractor-lienholder from completing the work. There was no evidence to indicate that the subcontractor was entitled to demand any money from the contractor at the time it submitted a bill, nor was there any proof that prompt payment by the contractor and time were of the essence to completion of

5

the work. Finally, because the subcontractor did not go to the homeowners and ask them for payment of the bill or ask them if they wanted the work completed, we concluded the subcontractor had willfully and voluntarily abandoned the contract before there had been substantial performance of its terms.

In the present case, the record does not contain evidence that Lessee's nonpayment prevented the plaintiffs from completing the work they had contracted to do. Plaintiffs presented no evidence that they were entitled to demand money from Lessee at the time they submitted their demands, nor did they present evidence that time and prompt payment by Lessee were of the essence to completion of their work under the contract. Further, they did not request payment by the Lessors, and they did not ask if Lessors wanted the work completed. In Gramm v. Insurance Unlimited (1963), 141 Mont. 456, 378 P.2d 662, we upheld a mechanic's lien on real property. We concluded that the contract clearly provided for prompt payment of installments by the homeowner to the contractor and time was of the essence. Gramm, 378 P.2d at 664. Plaintiffs failed to establish similar requirements in their contracts with the Lessee. In addition, plaintiffs have failed to establish that they relied upon the Lessors for payment and that they granted to the Lessors the opportunity to have the work completed.

If substantial evidence exists in the record to support the district court's judgment, we will not disturb that judgment. Berndt, 518 P.2d at 1171. In this case, the interior ceiling was not installed; the interior walls were not completed; painting was not completed; the wiring was not completed; none of the necessary electrical fixtures were in the building; the plumbing was not completed; and the walk-in cooler did not have doors. The cost to complete the work

6

could be as much as $30,000. The property was not usable for any commercial purpose. None of these facts have been contested by the plaintiffs. We conclude that substantial evidence exists to support the lower court's determination that the plaintiffs had not substantially completed the work they had contracted to perform.

Because plaintiffs had not substantially completed the contracted work, their liens were prematurely filed. Western Plumbing of Bozeman v. Garrison (1976), 171 Mont. 85, 88-89, 556 P.2d 520, 522. Therefore, we affirm the District Court's holding that the plaintiffs have failed to establish valid liens against the Lessors' property.

## II

Does merger of the leasehold and the fee permit enforcement, against the fee, of a lien upon the leasehold?

The plaintiffs assert that when the Lessee abandoned the leasehold, the leasehold merged with the Lessors' fee interest. They then urge that principles of equity would permit enforcement of the liens against the Lessors' interest. This argument, however, relies upon a valid lien. Without passing upon the merit of plaintiffs' underlying theory, our holding under Issue I renders consideration of this issue unnecessary.

## III

Should plaintiffs be allowed to recover under the theory of quantum meruit?

The plaintiffs argued that the value of the property was enhanced by their work. The District Court found that the work had not enhanced the value of the property. Both plaintiff Durand and defendant Dowdall testified that the property is not now useable for a service station, a restaurant, or any other commercial use. The court determined that the property also was not suitable for any non-commercial use.

7

The record contains substantial evidence to support these findings; therefore, they will not be disturbed. With this in mind, principles of equity do not weigh in favor of the plaintiffs' claim for quantum meruit. We hold that plaintiffs may not recover expenditures for their work under theory of quantum meruit.

IV

Was the claim of appellant Mutch, d/b/a/ Flathead Electric, barred due to untimely filing of the lien?

We need not consider this issue in light of our holding as to Issue I.

Affirmed.

_____
Justice

We Concur:

_____
_____
_____

Justices

Mr. Justice R. C. McDonough concurs and dissents as follows:

I concur with the District Court's holding that Mutch, d/b/a Flathead Electric, has no valid lien on defendants' property.

However, Plaintiffs Durand and Lien have a valid mechanic's lien against the defendants' property, as defendants consented in advance to the improvements. Morin Lumber Co. v. Person, et al. (1939), 110 Mont. 114, 99 P.2d 206. The lien statutes must be construed liberally in favor of the lien claimants to promote the purposes and objectives of such statutes. In Fausett v. Blanchard (1969), 154 Mont. 301, 463 P.2d 319, this Court stated as follows:

> In support of this argument respondents cite Morin Lumber Co. v. Person, supra, as holding that there need not be a direct contract between the lessor and the lienor but only that the owner must consent in advance to the improvement either expressly or impliedly, or subsequently ratify what has been done. This is a worthy argument based on a humane policy of protecting the laborer and materialman and there is ample authority to support it. This Court, in upholding a lien against improvements, in Caird Engineering Works v. Seven-Up Gold Mining Co., 111 Mont. 471, 479, 111 P.2d 267, 272, held:
>
> > This court is committed to the view that our lien statutes should receive a liberal construction to the end that the objects and purposes of the statutes may be carried out. . . . The statute giving the right to a lien is paramount to the conditions of the leases.
>
> . . .
>
> Nor do we find merit in appellant's contention that the lien holders waived their lien rights due to the provision in the lease absolving the appellant property owner from all liens. Labor and

9

> materialman's lien laws should be interpreted liberally to protect the right of the lien.

Fausett, 463 P.2d at 322-23.

By the terms of the lease with Mills the defendants knew that substantial improvements were to be made to the property. Defendant Dowdall visited the site when the demolition and remodeling were being done. Major structural changes were made. Interior walls were torn down and the building enlarged. Defendant Dowdall also sold the service station hoist during this time and arranged for its removal by the buyer, for the benefit of the remodeling project.

The majority opinion determines this case on the following inquiry: Did the court err in concluding that none of the plaintiffs substantially completed the work and by implication that they therefore had no right to assert liens upon the property?

In deciding this inquiry we look at the contracts between the Lessee Mr. Mills and the plaintiffs Mr. Durand and Mr. Lien. Each of these contracts were oral. Mr. Mills would inform each of the contractors what was to be done, orally and on an ad hoc basis. There were no plans and specifications. The uncontroverted testimony of both Mr. Durand and Mr. Lien stated that each went as far as he could under the instructions given to them by Mr. Mills. A portion of Mr. Durand's testimony under questioning by his attorney is as follows:

> Q. Wasn't it a piecemeal project?
>
> A. Yes, it was, definitely. If you want an explanation of it, Ed Mills had planned a Burger Inn that apparently -- they were built new around the state or wherever the Burger Inns were at. The first one I ever seen was this sign out here and he had a plan of putting this thing together.

10

He pretty much would lay out what we were to do when he came over. The basic structure, of course, had to be turned into what I would call a newer type of building where it had some insulation in it. That could be done without really much instruction from Ed Mills but as far as setting it up for all the equipment and how he wanted windows placed, the drive-up window and the doors and so on and so forth, he pretty much told me what to do when I would speak to the man.

Q. And when you came to the end of that particular parcel of the project, you would wait for Ed Mills for further instructions?

A. I believe all of us were waiting for further instructions from Ed Mills.

Q. And at the time you pulled off the job, had you completed that particular section?

A. I completed everything I could up to that point.

Q. So you could continue no further on the project?

A. Not without further instructions.

The testimony of Mr. Lien as he was questioned by his attorney is as follows:

Q. Were you piecemealing the project as Dean has testified to?

A. Pretty much, yes.

Q. When you walked off the job, as they have stated, had you completed everything you possibly could do at that time?

A. Everything on our part was 100 percent finished because the fixtures, sinks -- whatever type they wanted to put in -- facets, were to be furnished by the Burger Inn from what we understood, yes.

11

It was pointed out by Mr. Lien that a sewage sump pump could have been installed because he had been instructed by Mr. Mills to check the old one and it did not work. Mr. Lien stated he did not do so because he was not instructed to do so and because of the nonpayment for work already done.

Both Mr. Durand and Mr. Lien billed Mr. Mills for materials and services at the end of the first month of construction, and their uncontroverted testimony is that after Mr. Mills received Mr. Lien's bill he told Lien, "I'll get it to you one of these days," meaning the payment. Also after receiving Mr. Durand's first bill Mr. Mills stated to Durand, "I'll get the money right away." Other assurances of payment were made by Mr. Mills. The action by Mr. Mills in not providing the mechanics with further instructions to complete the project and the breach of the agreements that he would pay for the work billed, prevented the mechanics from completing the work. Bauer v. Cook (1979), 182 Mont. 221, 596 P.2d 200. In Smith v. Guiness, 115 Mont. 362, 144 P.2d 186, this Court stated:

> "One who prevents or makes impossible the performance or happening of a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of its non-performance. In other words, he who prevents a thing from being done shall never be permitted to avail himself of the non-performance which he himself occasioned. 12 Am.Jur., sec. 329, p. 885.
> The abandonment of an improvement before the completion thereof, by the owner of the premises, without fault on the part of the contractor, does not abrogate the right of the contractor, laborers, and material men to mechanics' liens for the value of the work done and the material furnished. In such case, the building or improvement is to be deemed completed, so far as the rights of persons to assert liens is concerned. 36 Am.Jur., sec. 35, p. 38."

12

Bauer, 144 P.2d at 191.

On the basis of the uncontroverted testimony of Mr. Lien and Mr. Durand, Mr. Mills did breach his contract by failing to pay as promised. The contractors went as far as they could without receiving further instructions which were not given. Therefore, they were prevented from completing their contract and were entitled on the basis of Smith v. Guiness to file a mechanic's lien.

_____
Justice

Retired Chief Justice Frank I. Haswell, sitting for Chief Justice J.A. Turnage, and Justice William E. Hunt, concur in the foregoing.

_____
Retired Chief Justice

_____
Justice

13