MR. JUSTICE McDONOUGH,
concurring and dissenting:
I concur with the District Court’s holding that Mutch, d/b/a Flathead Electric, has no valid lien on defendants’ property.
However, Plaintiffs Durand and Lien have a valid mechanic’s lien against the defendants’ property, as defendants consented in advance to the improvements. Morin Lumber Co. v. Person, et al. (1939), 110 Mont. 114, 99 P.2d 206. The lien statutes must be construed liberally in favor of the lien claimants to promote the purposes and objectives of such statutes. In Fausett v. Blanchard (1969), 154 Mont. 301, 463 P.2d 319, this Court stated as follows:
“In support of this argument respondents cite Morin Lumber Co. v. Person, supra, as holding that there need not be a direct contract between the lessor and the lienor but only that the owner must consent in advance to the improvement either expressly or impliedly, or subsequently ratify what has been done. This is a worthy argument based on a humane policy of protecting the laborer and materialman and there is ample authority to support it. This Court, in upholding a lien against improvements, in Caird Engineering Works v. Seven-Up Gold Mining Co., 111 Mont. 471, 479, 111 P.2d 267, 272, held:
“This court is committed to the view that our lien statutes should receive a liberal construction to'the end that the objects and purposes of the statutes may be carried out .... The statute giving the right to a lien is paramount to the conditions of the leases.’
*354 “Nor do we find merit in appellant’s contention that the lien holders waived their lien rights due to the provision in the lease absolving the appellant property owner from all liens. Labor and material-man’s lien laws should be interpreted liberally to protect the right of the lien.”
Fausett, 463 P.2d at 322-23.
By the terms of the lease with Mills the defendants knew that substantial improvements were to be made to the property. Defendant Dowdall visited the site when the demolition and remodeling were being done. Major structural changes were made. Interior walls were torn down and the building enlarged. Defendant Dowdall also sold the service station hoist during this time and arranged for its removal by the buyer, for the benefit of the remodeling project.
The majority opinion determines this case on the following inquiry: Did the court err in concluding that none of the plaintiffs substantially completed the work and by implication that they therefore had no right to assert liens upon the property?
In deciding this inquiry we look at the contracts between the Lessee Mr. Mills and the plaintiffs Mr. Durand and Mr. Lien. Each of these contracts were oral. Mr. Mills would inform each of the contractors what was to be done, orally and on an ad hoc basis. There were no plans and specifications. The uncontroverted testimony of both Mr. Durand and Mr. Lien stated that each went as far as he could under the instructions given to them by Mr. Mills. A portion of Mr. Durand’s testimony under questioning by his attorney is as follows:
“Q. Wasn’t it a piecemeal project?
“A. Yes, it was, definitely. If you want an explanation of it, Ed Mills had planned a Burger Inn that apparently — they were built new around the state or wherever the Burger Inns were at. The first one I ever seen was this sign out here and he had a plan of putting this thing together.
“He pretty much would lay out what we were to do when he came over. The basic structure, of course, had to be turned into what I would call a newer type of building where it had some insulation in it. That could be done without really much instruction from Ed Mills but as far as setting it up for all the equipment and how he wanted windows placed, the drive-up window and the doors and so on and so forth, he pretty much told me what to do when I would speak to the man.
*355 “Q. And when you came to the end of that particular parcel of the project, you would wait for Ed Mills for further instructions?
“A. I believe all of us were waiting for further instructions from Ed Mills.
“Q. And at the time you pulled off the job, had you completed that particular section?
“A. I completed everything I could up to that point.
“Q. So you could continue no further on the project?
“A. Not without further instructions.”
The testimony of Mr. Lien as he was questioned by his attorney follows:
“Q. Were you piecemealing the project as Dean has testified to?
“A. Pretty much, yes.
“Q. When you walked off the job, as they have stated, had you completed everything you possibly could do at that time?
“A. Everything on our part was 100 percent finished because the fixtures, sinks — whatever type they wanted to put in — facets, were to be furnished by the Burger Inn from what we understood, yes.”
It was pointed out by Mr. Lien that a sewage sump pump could have been installed because he had been instructed by Mr. Mills to check the old one and it did not work. Mr. Lien stated he did not do so because he was not instructed to do so and because of the nonpayment for work already done.
Both Mr. Durand and Mr. Lien billed Mr. Mills for materials and services at the end of the first month of construction, and their uncontroverted testimony is that after Mr. Mills received Mr. Lien’s bill he told Lien, “I’ll get it to you one of these days,” meaning the payment. Also after receiving Mr. Durand’s first bill Mr. Mills stated to Durand, “I’ll get the money right away.” Other assurances of payment were made by Mr. Mills. The action by Mr. Mills in not providing the mechanics with further instructions to complete the project and the breach of the agreements that he would pay for the work billed, prevented the mechanics from completing the work. Bauer v. Cook (1979), 182 Mont. 221, 596 P.2d 200. In Smith v. Guiness, (1943) 115 Mont. 362, 144 P.2d 186, this Court stated:
“One who prevents or makes impossible the performance or happening of a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of its non-performance. In other words, he who prevents a thing from being done shall never be permitted to avail himself of the non-per *356 formance which he himself occasioned. 12 Am.Jur., Section 329, p. 885.
“The abandonment of an improvement before the completion thereof, by the owner of the premises, without fault on the part of the contractor, does not abrogate the right of the contractor, laborers, and material men to mechanics’ liens for the value of the work done and the material furnished. In such case, the building or improvement is to be deemed completed, so far as the rights of persons to assert liens is concerned. 36 Am.Jur., Section 35, p. 38.”
Smith, 144 P.2d at 191.
On the basis of the uncontroverted testimony of Mr. Lien and Mr. Durand, Mr. Mills did breach his contract by failing to pay as promised. The contractors went as far as they could without receiving further instructions which were not given. Therefore, they were prevented from completing their contract and were entitled on the basis of Smith v. Guiness to file a mechanic’s lien.
MR. CHIEF JUSTICE HASWELL, retired, sitting for MR. CHIEF JUSTICE TURNAGE, and MR. JUSTICE HUNT concur in the foregoing.